IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED IN OPEN COURT
MAR - 7 2024
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEBASTIAN ENRIQUE MARSET CABRERA,<br>  a/k/a "Luis Paulo Amorim Santos,"<br>  a/k/a "Gabriel De Souza Beumer,"<br>  a/k/a "Sebastian Enrique Marset Cabrera de Padua,"<br>  a/k/a "Dor,"<br><br>FEDERICO EZEQUIEL SANTORO VASSALLO,<br>  a/k/a "Frederico Ezequiel Santoro Vasallo,"<br>  a/k/a "Capitan,"<br><br>    Defendants. | Case No. 1:23-CR-143<br><br>Count 1:<br>Conspiracy to Commit Money Laundering<br>(18 U.S.C. § 1956(h))<br><br>Forfeiture Notice<br><br>**UNDER SEAL** |

**SUPERSEDING INDICTMENT**

March 2024 Term – Alexandria, Virginia

GENERAL ALLEGATIONS

1. At all times relevant to this Superseding Indictment, SEBASTIAN ENRIQUE MARSET CABRERA ("MARSET") (also known as "Luis Paulo Amorim Santos," "Gabriel De Souza Beumer," "Sebastian Enrique Marset Cabrera de Padua," and "Dor") was a transnational drug trafficker based in South America. MARSET was responsible for the movement of ton quantities of cocaine, worth millions of United States Dollars, from South America to Europe. FEDERICO EZEQUIEL SANTORO VASSALLO ("SANTORO") (also known as "Frederico

Ezequiel Santoro Vassallo" and "Capitan") was a Paraguay-based transnational money launderer. SANTORO was a close associate of MARSET's and served as a transnational money launderer for MARSET's drug trafficking organization. SANTORO was in direct communication with MARSET and facilitated the movement of millions of dollars of MARSET's drug proceeds from various countries in Europe to South America and other locales abroad. While MARSET and SANTORO worked together closely, SANTORO also provided money laundering services for others, and MARSET used other money launderers besides SANTORO.

2. MARSET worked with SANTORO and other co-conspirators both known and unknown to the grand jury to arrange for the collection of narcotics proceeds. MARSET and SANTORO would utilize couriers and tokens to covertly deliver bulk illicit currency, typically in Euros, to their co-conspirators, including in suitcases on the side of public roadways in Europe. Their co-conspirators specialized in placing illicit currency into the global banking system.

3. Once the drug proceeds of MARSET and others were placed into the European banking system, SANTORO would direct the movement of the funds internationally, typically via bank wire transfer, and sometimes at the specific instruction of MARSET.

4. Typically, SANTORO would direct that the funds delivered be in U.S. dollars and a correspondent bank located in the United States would facilitate the transaction. On at least one occasion, MARSET would direct SANTORO for a specific dollar amount to be wired to a particular account.

5. At least one of the bank wire transfers made by SANTORO and his co-conspirators was routed through a U.S. correspondent bank's server located in Richmond, Virginia, within the Eastern District of Virginia.

6. SANTORO and his co-conspirators used at least seven businesses to facilitate the transmission of money for MARSET and others. SANTORO and his co-conspirators hid the location and ownership of the assets being laundered by using unrelated companies all registered as purportedly doing business in different, unrelated industries. SANTORO and his co-conspirators would conceal the source of the funds by creating false invoices to justify the wire transfers.

7. SANTORO and his co-conspirators moved MARSET's and others' illicit funds into various unrelated bank accounts held by different, unrelated entities. SANTORO and his co-conspirators used businesses registered in South America and Asia to receive the laundered drug proceeds.

8. During the course of the conspiracy, MARSET and SANTORO threatened violence against others in order to protect the carrying on of their drug trafficking and money laundering activities.

9. In total, SANTORO laundered many millions of drug proceeds. In one span of less than five months during the charged conspiracy, SANTORO directed the movement of at least eight million U.S. dollars in funds derived from drug trafficking through U.S. correspondent banks. SANTORO would accept payment for his money laundering services in the form of a percentage of the illicit bulk cash proceeds that he laundered for MARSET and others.

10. In January 2021, MARSET was owed more than 17 million Euros from the proceeds of a single shipment of cocaine. MARSET and SANTORO arranged for the collection and laundering of at least 5 million of those Euros, the vast majority of which was laundered using the United States banking system.

11. In total, MARSET's drug trafficking organization distributed many thousands of kilograms of cocaine that generated tens of millions of Euros in cash drug proceeds.

## COUNT ONE

*(Money Laundering Conspiracy)*

THE GRAND JURY CHARGES THAT:

12. Paragraphs 1 to 11 of the General Allegations section of this Indictment are re-alleged and re-incorporated as if fully set forth herein.

13. Beginning in at least November 2019 and continuing thereafter up to and including September 2021, the exact dates being unknown to the Grand Jury, in Belgium, Chile, China, the Netherlands, Paraguay, Portugal, New York, and the city of Richmond, Virginia, within the Eastern District of Virginia, and elsewhere, the defendants, SEBASTIAN ENRIQUE MARSET CABRERA and FEDERICO EZEQUIEL SANTORO VASSALLO, did knowingly and unlawfully combine, conspire, confederate, and agree with other persons both known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

(a) To knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represents the proceeds of some form of unlawful activity, and which involved the proceeds of specified unlawful activity, that is, an offense against a foreign nation involving the manufacture, importation, sale, and distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act) as defined in Title 18, United States Code, Section 1956(c)(7)(B)(i):

    (1) with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i); and

    (2) knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(b) to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States:

    (1) with the intent to promote the carrying on of specified unlawful activity, to wit: an offense against a foreign nation involving the manufacture, importation, sale, and distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act) as defined in Title 18, United States Code, Section 1956(c)(7)(B)(i), in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

    (2) knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United Sates Code, Section 1956(a)(2)(B)(i).

## OBJECT OF THE CONSPIRACY

14.     The object of the conspiracy was to transfer funds derived from the unlawful sale of cocaine in Europe into U.S. dollars and back to the South American drug traffickers in a manner designed to conceal the nature, source, and ownership of those funds, and to promote the carrying on of drug trafficking and the enrichment of the members of the conspiracy.

(All in violation of Title 18, United States Code, Section 1956(h)).

## FORFEITURE NOTICE

The GRAND JURY FINDS that there is probable cause that the property described in this FORFEITURE NOTICE is subject to forfeiture pursuant to the statutes described herein.

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendants, SEBASTIAN ENRIQUE MARSET CABRERA (also known as "Luis Paulo Amorim Santos," "Gabriel De Souza Beumer," "Sebastian Enrique Marset Cabrera de Padua," and "Dor") and FEDERICO EZEQUIEL SANTORO VASSALLO (also known as "Frederico Ezequiel Santoro Vassallo" and "Capitan") are hereby notified that if convicted of the offense set forth in Count One of the Indictment, the defendants, SEBASTIAN ENRIQUE MARSET CABRERA and FREDERICO EZEQUIEL SANTORO VASSALLO, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

Pursuant to 21 U.S.C. § 853(p), the defendants, SEBASTIAN ENRIQUE MARSET CABRERA and FEDERICO EZEQUIEL SANTORO VASSALLO, shall forfeit substitute property, if, by any act or omission of the defendants, SEBASTIAN ENRIQUE MARSET CABRERA and FEDERICO EZEQUIEL SANTORO VASSALLO, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially

//

//

//

//

diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853(p); and Federal Rule of Criminal Procedure 32.2(a))

A TRUE BILL

Pursuant to the E-Government Act, The original of this page has been filed under seal in the Clerk's Office

_____
Foreperson

Jessica D. Aber
United States Attorney

By: _____
Anthony T. Aminoff
Assistant United States Attorney