IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED
IN OPEN COURT

JUN 2 5 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEBASTIAN ENRIQUE MARSET CABRERA,<br>  a/k/a "Luis Paulo Amorim Santos,"<br>  a/k/a "Gabriel De Souza Beumer,"<br>  a/k/a "Sebastian Enrique Marset Cabrera de Padua,"<br>  a/k/a "Dor,"<br><br>Defendant. | Case No. 1:23-CR-143<br><br>Count 1: Narco-Terrorism Conspiracy<br>(21 U.S.C. § 960a)<br><br>Count 2: Conspiracy to Possess with Intent to Distribute Cocaine Aboard a Vessel Subject to U.S. Jurisdiction<br>(46 U.S.C. §§ 70503, 70506)<br><br>Count 3: Money Laundering Conspiracy<br>(18 U.S.C. § 1956(h))<br><br>Count 4: Money Laundering<br>(18 U.S.C. § 1956(a)(1)(B)(i))<br><br>Forfeiture Notice |

**SECOND SUPERSEDING INDICTMENT**

June 2026 Term – Alexandria, Virginia

GENERAL ALLEGATIONS

*The Defendant*

1.    At all times relevant to this Second Superseding Indictment, SEBASTIAN ENRIQUE MARSET CABRERA ("MARSET") (also known as "Luis Paulo Amorim Santos," "Gabriel De Souza Beumer," "Sebastian Enrique Marset Cabrera de Padua," and "Dor") was the leader of a transnational drug trafficking and money laundering organization ("DTMLO") based in South America. The MARSET DTMLO was also referred to as the Primer Cartel Uruguayo

("PCU") or the First Uruguayan Cartel. MARSET, a Uruguayan citizen, was responsible for the movement of ton quantities of cocaine, worth millions of United States dollars, from South America to various locations around the world, particularly in Europe.

2.     Unindicted Co-Conspirator 1 ("UCC-1") is a Colombian citizen who worked for MARSET. UCC-1 oversaw the importation of cocaine into Europe from South America, as well as the deposit of drug proceeds to money launderers working on behalf of the MARSET DTMLO.

3.     Unindicted Co-Conspirator 2 ("UCC-2") is a Paraguay-based transnational money launderer. UCC-2 was also a close associate of MARSET's who served as a transnational money launderer for the MARSET DTMLO.

4.     FEDERICO EZEQUIEL SANTORO VASSALLO ("SANTORO") (also known as "Capitain" or "Captain") was a Paraguay-based transnational money launderer. SANTORO was a close associate of MARSET's who served as a transnational money launderer for the MARSET DTMLO.

### The Scheme

5.     The MARSET DTMLO obtained cocaine from source countries in the Andean region of South America, including Peru, Colombia, and Bolivia.

6.     The MARSET DTMLO transited cocaine from laboratories in the source countries to ports, particularly in Brazil, Paraguay, and Uruguay. Typically, the cocaine was sent via shipping containers throughout the world, but particularly to Western Europe, and specifically to Portugal, Spain, the Netherlands, and Belgium, for further distribution. Some of these shipments contained ten tons of cocaine or more.

7.     The MARSET DTMLO also transported cocaine on unflagged vessels – i.e., vessels that had no flag or name and were without nationality.

8. UCC-1 served as an intermediary between European buyers of cocaine and MARSET. After the sale of cocaine to European drug traffickers, UCC-1 would utilize couriers to arrange for delivery of narcotics proceeds to the MARSET DTMLO via couriers working for SANTORO and UCC-2. The couriers would utilize tokens, which were typically the serial number on a bill, to ensure delivery of the bulk illicit currency to the correct person and to have a receipt for the transaction. The bulk currency transfers occurred in a variety of locations, including on the side of public roadways, where suitcases full of euros changed hands.

9. SANTORO and UCC-2 utilized multiple methods to launder money on MARSET's behalf. One method was trade-based money laundering. In this method, other co-conspirators working for SANTORO and UCC-2, both known and unknown, would place the illicit currency into the global banking system, using multiple European businesses to claim the narcotics proceeds as legitimate income. The MARSET DTMLO hid the location and ownership of the assets being laundered by using unrelated companies all registered as purportedly doing business in different, unrelated industries. The MARSET DTMLO would conceal the source of the funds by creating false invoices to justify the wire transfers.

10. Once the drug proceeds of the MARSET DTMLO were placed into the European banking system, SANTORO and UCC-2 would direct the movement of the funds internationally, typically via bank wire transfer, and sometimes at the specific instruction of MARSET.

11. At MARSET's direction, SANTORO and UCC-2 would direct that the funds were delivered in U.S. dollars, and a correspondent bank located in the United States would facilitate the transaction. On at least one occasion, MARSET directed SANTORO to wire a specific U.S. dollar amount to a particular account.

3

12.    The MARSET DTMLO also used businesses registered in South America and Asia to receive the laundered drug proceeds.

13.    SANTORO and UCC-2 would deliver bulk cash in U.S. dollars to the MARSET DTMLO, typically in Paraguay, Bolivia, or Peru. MARSET used the dollars generated to purchase more cocaine, further his drug trafficking activities, and further the activities of the MARSET DTMLO.

14.    The MARSET DTMLO also utilized cryptocurrency, in particular USDT, to launder narcotics proceeds.

15.    In total, SANTORO and UCC-2 laundered hundreds of millions of dollars on behalf of the MARSET DTMLO.

### *2021 Money Laundering*

16.    In early 2021, UCC-1 owed MARSET more than 17,000,000 euros for cocaine shipments.

17.    On January 5, January 6, January 9, January 13, January 14, January 15, January 19, January 25, February 5, and February 9, 2021, UCC-1 arranged deliveries of bulk euros to couriers working at the direction of SANTORO and UCC-2. The amount of money delivered on each date ranged from 500,000 Euros to 1,500,000 euros. The total amount delivered on these dates was 7,500,000 euros. A ledger maintained during the conspiracy documented the aforementioned transactions and is re-produced below with translations and redactions.

| USD UCC-1 Owes | UCC-1 Owes | TOKEN | Date FECHA | Place LUGAR |
|---|---|---|---|---|
| 7.695.000 | 17.822.000 | | | |
| | -1.000.000 | MA 1004 | 05/01/2021 | CAPTAIN |
| | -500.000 | MA 4202 | 06/01/2021 | UCC-2 |
| | -500.000 | 2600 | 09/01/2021 | UCC-2 |
| | -500.000 | VA 9087 | 13/01/2021 | UCC-2 |
| | -500.000 | YA 3714 | 14/01/2021 | CAPTAIN |
| | -1.000.000 | YA 3679 | 15/01/2021 | CAPTAIN |
| | -500.000 | PA 6251 | 19/01/2021 | UCC-2 |
| | -1.000.000 | MA 4564 | 25/01/2021 | CAPTAIN |
| | -1.500.000 | YA 8042 | 05/02/2021 | CAPTAIN |
| | -500.000 | MA 5893 | 09/02/2021 | UCC-2 |
| DEBE USD  7.695.000 | 10.322.000  DEBE EUROS | | | |
| Owes USD | Owes Euros | | | |

18.    The co-conspirators used tokens for the delivery and tracking of the narcotics proceeds. For example, SANTORO dispatched Unindicted Co-Conspirator 3 ("UCC-3") to pick up 1,000,000 euros on January 25, 2021. UCC-3 confirmed receipt of the funds by sending the following picture to SANTORO. The first two letters and last four numbers of the serial number are noted in the ledger above.



19.    SANTORO and UCC-2 arranged for the narcotics proceeds to be laundered back to MARSET. SANTORO laundered his share of the funds by having co-conspirators place the funds into various European businesses, and then directing the money to be wired internationally in U.S. dollars. The vast majority of these funds involved U.S. based correspondent banks facilitating the transactions.

20.    On or about February 18, 2021, at the direction of SANTORO, UCC-1 wired approximately 31,800 U.S. dollars in narcotics proceeds from Novo Banco S.A., a Portuguese bank, to the account of a Chinese freight forwarding and logistics provider with the Hongkong and Shanghai Banking Corporation, in furtherance of the money laundering scheme. Bank of America served as the correspondent bank for the transaction, with its servers located in Richmond, Virginia, within the Eastern District of Virginia, processing the transaction.

### *June 2024 Seizure near San Andres Island, Colombia*

21.    In approximately June 2024, MARSET conspired with a member of Colombia's Clan del Golfo and others to ship approximately 1,700 kilograms of cocaine by go-fast vessel from Colombia to Costa Rica.

22.    On or about June 16, 2024, a go-fast vessel departed from in or around Altos de Julio, Colombia, and left the territorial waters of Colombia.

23.    Later on or about June 16, 2024, Colombian authorities intercepted the vessel in the Caribbean Sea and arrested the individuals on board.

24.    During the interdiction, a short pursuit ensued, and the individuals onboard the go-fast vessel jettisoned the cargo into the sea. Colombian authorities recovered the items thrown overboard and in total collected approximately 1,653 kilograms of cocaine.

25.    The vessel had no flag or name and was a vessel without nationality.

*Threatened and Actual Acts of Violence*

26.    The MARSET DTMLO threatened violence, attempted violence, conspired to commit violence, and carried out acts of violence. These violent activities, which involved weapons, dangerous devices, firearms, and explosives, were carried out other than for MARSET's mere personal monetary gain. The goals included, among other things, advancing MARSET's control of his organization, ensuring his own liberty, and intimidating others into submitting to his will.

27.    On or about May 9, 2020, MARSET caused a co-conspirator to detonate a grenade in the parking lot of the Headquarters of the Uruguayan National Police's Direccion General de Represion al Trafico Ilicito de Drogas (General Directorate for the Suppression of Illicit Drug Trafficking) in Montevideo, Uruguay.

28.    On or about May 10, 2020, MARSET directed a co-conspirator to send a threatening text message to an Uruguayan prosecutor involved in narcotics investigations that affected the MARSET DTMLO. The message stated in sum and substance that law enforcement needed to give respect to the PCU to prevent further violent acts by the PCU, and that if law enforcement made things difficult for the PCU, the PCU would make things difficult for law enforcement.

29.    In approximately September 2020, MARSET personally shot and killed a co-conspirator because MARSET believed the co-conspirator was plotting against him and the MARSET DTMLO.

30.    On approximately September 12, 2021, in Asunción, Paraguay, MARSET arranged for a co-conspirator to be killed because MARSET believed that co-conspirator to be cooperating with law enforcement.

7

31.     On approximately March 26, 2025, a Special Agent with the U.S. Drug Enforcement Administration ("DEA") contacted MARSET to encourage him to turn himself in. MARSET responded by threatening the DEA Special Agent.

## COUNT ONE
*(Narcoterrorism Conspiracy)*

THE GRAND JURY CHARGES THAT:

### A. Introductory Allegations

Paragraphs 1 through 31 of the General Allegations section of this Indictment are re-alleged and re-incorporated as if fully set forth herein.

### B. Statutory Allegation

From approximately in and around 2018 through March 13, 2026, in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, including in Belgium, Bolivia, Brazil, Colombia, the Netherlands, Paraguay, Peru, Portugal, Spain, Uruguay, and elsewhere, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA, who was first brought to and arrested in the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to commit the following offense against the United States: to engage in conduct that would be punishable under Title 21, United States Code, Section 841(a), if committed within the jurisdiction of the United States, that is, to knowingly and intentionally manufacture, distribute, and possess with intent to manufacture and distribute five (5) kilograms and more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending to provide, directly and indirectly, anything of pecuniary value to any person and organization that has engaged and engages in terrorist activity (as defined in Title 8, United States Code, Section 1182(a)(3)(B)) and terrorism (as defined in Title 22, United States Code, Section 2656f(d)(2)), to wit, the MARSET Drug Trafficking and Money Laundering Organization, also known as the Primer Cartel Uruguayo, or PCU, having knowledge that said organization has engaged and engages in terrorist activity and terrorism.

9

Pursuant to Title 21, United State Code, Section 960a(b), jurisdiction arises as: (1) the prohibited drug activity and terrorist offense are in violation of the criminal laws of the United States, (2) the offense, the prohibited drug activity, and the terrorist offense occurred in and affected interstate and foreign commerce, and (3) after the offense conduct occurred, the offender was brought into and found in the United States.

(Title 21, United States Code, Sections 960a(a), 960a(b), 841(a)(1), 841(b)(1)(A)(ii), and
Title 18, United States Code, Sections 3238 and 2)

## COUNT TWO

*(Conspiracy to Possess with Intent to Distribute Cocaine
Aboard a Vessel Subject to U.S. Jurisdiction)*

THE GRAND JURY FURTHER CHARGES THAT:

### A. Introductory Allegations

Paragraphs 21 through 25 of the General Allegations section of this Indictment are re-alleged and re-incorporated as if fully set forth herein.

### B. Statutory Allegation

On or about June 16, 2024, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA, together with others known and unknown, in an offense begun and committed upon the high seas and elsewhere outside the jurisdiction of any particular State or district, did knowingly and intentionally combine, conspire, confederate and agree to commit an offense defined in 46 U.S.C. § 70503(a)(1), that is: to knowingly and intentionally possess with intent to distribute five (5) kilograms and more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, aboard a vessel subject to the jurisdiction of the United States.

(Title 46, United States Code, Sections 70503(a)(1) and 70506(b)
Title 21, United States Code, Section 960(b)(1)(B)
Title 18, United States Code, Section 2)

11

## COUNT THREE

*(Money Laundering Conspiracy)*

THE GRAND JURY FURTHER CHARGES THAT:

### A. Introductory Allegations

Paragraphs 1 through 31 of the General Allegations section of this Indictment are re-alleged and re-incorporated as if fully set forth herein.

### B. Statutory Allegation

Beginning in approximately 2018 and continuing thereafter up to and including 2023, the exact dates being unknown to the Grand Jury, in Belgium, Bolivia, Chile, China, the Netherlands, Paraguay, Peru, Portugal, Uruguay, New York, and the city of Richmond, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA, who was first brought to the Eastern District of Virginia, together with others known and unknown, did knowingly and unlawfully combine, conspire, confederate, and agree with other persons both known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956(h), to wit:

(1) To knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represents the proceeds of some form of unlawful activity, and which involved the proceeds of specified unlawful activity, that is, an offense against a foreign nation involving the manufacture, importation, sale, and distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act) as defined in Title 18, United States Code, Section 1956(c)(7)(B)(i):

12

    a. knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(2) to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States:

    a. with the intent to promote the carrying on of specified unlawful activity, to wit: an offense against a foreign nation involving the manufacture, importation, sale, and distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act) as defined in Title 18, United States Code, Section 1956(c)(7)(B)(i), in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

    b. knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

13

It is further alleged that the specified unlawful activity is the manufacture, importation, sale, and distribution of a controlled substance, to wit, cocaine, punishable under the laws of Belgium, Bolivia, Brazil, the Netherlands, Paraguay, Peru, Portugal, and Uruguay.

## OBJECT OF THE CONSPIRACY

The object of the conspiracy was to transfer funds derived from the unlawful sale of cocaine into U.S. dollars and back to the MARSET DTMLO in a manner designed to conceal the nature, source, and ownership of those funds, and to promote the carrying on of drug trafficking, the enrichment of the members of the conspiracy, and to support the MARSET DTMLO.

(All in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(B)(i), 1956(a)(2)(A), 1956(a)(2)(B)(i), and 2).

14

## COUNT FOUR

*(Money Laundering)*

THE GRAND JURY FURTHER CHARGES THAT:

### A. Introductory Allegations

Paragraphs 16 through 20 of the General Allegations section of this Indictment are re-alleged and re-incorporated as if fully set forth herein.

### B. Statutory Allegation

On or about February 18, 2021, in Portugal, the People's Republic of China, and Richmond, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, a transfer of $31,716.99 from Novo Banco S.A. to Hongkong and Shanghai Banking Corporation, which involved the proceeds of a specified unlawful activity, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

It is further alleged that the specified unlawful activity is the manufacture, importation, sale, and distribution of a controlled substance, to wit, cocaine, punishable under the laws of Belgium, Bolivia, Brazil, the Netherlands, Paraguay, Peru, Portugal, and Uruguay.

(In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2, and
*Pinkerton v. United States*, 328 U.S. 640 (1946) (coconspirator liability)).

15

## FORFEITURE NOTICE

The GRAND JURY FINDS that there is probable cause that the property described in this FORFEITURE NOTICE is subject to forfeiture pursuant to the statutes described herein.

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA is hereby notified that if convicted of the offense set forth in Count One of the Second Superseding Indictment, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA, shall forfeit to the United States, pursuant to 21 U.S.C. §§ 853(a) and 970, 18 U.S.C. §§ 981(a)(1)(G) and 981(a)(1)(C), 28 U.S.C. § 2461(c), the following: (1) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation; (2) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; (3) all assets, foreign or domestic, of any individual, entity, or organization engaged in planning or perpetrating the violation against the United States, citizens or residents of the United States, or their property and all assets, foreign or domestic, affording a source of influence over any such entity or organization; (4) all assets, foreign or domestic, acquired or maintained with the intent and for the purpose of supporting, planning, conducting, or concealing the violation against the United States, citizens or residences of the United States, or their property; (5) all assets, foreign and domestic, derived from, involved in, or used or intended to be used to commit the violation against the United States, citizens or residents of the United States, or their property; and (6) all assets, foreign and domestic, of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism against any international organization or against any foreign Government.

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA is hereby notified that if convicted of the offense

16

set forth in Count Two of the Second Superseding Indictment, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA, shall forfeit to the United States, pursuant to 46 U.S.C. § 70507 and 28 U.S.C. § 2461(c), any property described in 21 U.S.C. § 881(a) that is used or intended for use to commit, or to facilitate the commission of, an offense.

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA is hereby notified that if convicted of any of the offenses set forth in Counts Three and Four of the Second Superseding Indictment, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

The property subject to forfeiture includes, but is not limited to, the following:

a. approximately 1,499,980.65 USDT seized from wallet address TNK8FAh1KwroyWTszqNFDoay7QSUmNLRMD;

b. approximately 1,038,412.48 USDT seized from wallet address TR5Rv4KjChqFoJUFjhcYNjGTVNTkiwX9cM; and

c. approximately 1,470,464 USDT seized from wallet address TQyE4ZmKxoyDDMLoepwwyTaKsTAxnoNqqQ.

Pursuant to 21 U.S.C. § 853(p), the defendant, SEBASTIAN ENRIQUE MARSET CABRERA shall forfeit substitute property, if, by any act or omission of the defendant, SEBASTIAN ENRIQUE MARSET CABRERA, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with Title 18, United States Code, Sections 982(a)(1), 981(a)(1)(G), 981(a)(1)(C); Title 21, United States Code, Sections 853 and 970; Title 46, United States Code, Section 70507; and Federal Rule of Criminal Procedure 32.2(a))

17

A TRUE BILL

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson

Todd W. Blanche
Acting Attorney General

By:    _____
Anthony T. Aminoff
Catherine Rosenberg
Assistant United States Attorneys

18