UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | Case No. 1:23-CR-143 |
| SEBASTIAN ENRIQUE MARSET CABRERA | : | |
| Defendant | : | |

# DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE SECOND SUPERSEDING INDICTMENT

## INTRODUCTION

The United States is not the "world's policeman," according to both former President Barrack Obama,[1] and current President Donald Trump.[2] This message seems to be lost on both the prosecutors and DEA agents assigned to this case.

Count One of the Second Superseding Indictment (SSI) charges the defendant with drug trafficking activity wholly outside – and with no connection to - the United States, which allegedly was intended to provide financial support to a person or an organization known as the Marset Drug Trafficking and Money Laundering Organization (MDTLO) that engaged in "terrorist activity" or "terrorism," in violation of 21 United States Code Section 960a. As explained herein, the due process clause bars these charges because of the lack of nexus between the defendant's alleged conduct and the United States. In addition, the defendant's alleged conduct does not satisfy the definition of "terrorist activity" or "terrorism" because their motive was personal monetary gain.

[1] https://www.ndtv.com/world-news/america-is-not-the-worlds-policeman-text-of-barack-obamas-speech-on-syria-534239.

[2] https://www.c-span.org/clip/washington-journal/president-trump-we-are-not-wanting-to-be-the-policeman-of-the-world/4737620.

For these reasons, Count One must be dismissed.

## RELEVANT FACTS

## THE ELEMENTS OF 21 U.S. CODE SECTION 960a

Count One of the SSI alleges in relevant part as follows:

> From approximately in and around 2018 through March 13, 2026, in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, including in Belgium, Bolivia, Brazil, Colombia, the Netherlands, Paraguay, Peru, Portugal, Spain, Uruguay, and elsewhere, the defendant, SEBASTIAN ENRIQUE MARSET CABRERA . . . did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to commit the following offense against the United States: to engage in conduct that would be punishable under Title 21, United States Code, Section 841(a), if committed within the jurisdiction of the United States, that is, to knowingly and intentionally manufacture, distribute, and possess with intent to manufacture and distribute five (5) kilograms and more of a mixture and substance containing a detectable amount of cocaine . . . knowing and intending to provide, directly and indirectly, anything of pecuniary value to any person and organization that has engaged and engages in terrorist activity . . . and terrorism . . . to wit, the MARSET Drug Trafficking and Money Laundering Organization, also known as the Primer Cartel Uruguayo, or PCU, having knowledge that said organization has engaged and engages in terrorist activity and terrorism.

The statutory language contained in the SSI thus requires that the Government allege (and then prove at trial) the following conduct: (1) that the defendant engaged in drug trafficking that would be illegal if committed in the United States; and (2) that the defendant committed the drug trafficking knowing and intended to provide support to an organization engaged in terrorist activity or terrorism. This section reviews the factual predicate contained in the SSI that allegedly support the elements of Count One.

### *1. International Drug Trafficking From South America To Europe*

According to the SSI, the defendant is an international drug trafficker based in Uruguay, South America and the leader of the MDTMLO. The SSI alleges that the defendant was sending cocaine shipments from South America to Europe. Specifically, the SSI states that:

> 5. The MARSET DTMLO obtained cocaine from source countries in the Andean

> region of South America, including Peru, Colombia, and Bolivia.
>
> 6. The MARSET DTMLO transited cocaine from laboratories in the source countries to ports, particularly in Brazil, Paraguay, and Uruguay. Typically, the cocaine was sent via shipping containers throughout the world, but particularly to Western Europe, and specifically to Portugal, Spain, the Netherlands, and Belgium, for further distribution. Some of these shipments contained ten tons of cocaine or more.

SSI at p. 2.

Thus, the defendant is not charged with a violation of domestic United States drug trafficking laws, nor is he alleged to have ever sent even a gram of cocaine to the United States. Rather, Count One intends to criminalize conduct without any nexus to the United States that would be:

> punishable under Title 21, United States Code, Section 841(a), **if committed within the jurisdiction of the United States**, that is, to knowingly and intentionally manufacture, distribute, and possess with intent to manufacture and distribute five (5) kilograms and more of a mixture and substance containing a detectable amount of cocaine . . . .

SSI; Count One at p. 9 (emphasis added).

***2. Providing Anything Of Pecuniary Value To An Organization Involved In Terrorist Activity Or Terrorism***

The SSI also alleges that the defendant provided "pecuniary value" to the MDTMLO, also known as the "Primer Cartel Uruguayo," or PCU, knowing that the organization engaged and engages in terrorist activity and terrorism.

With respect to this allegation, the SSI does not contain any details concerning the PCU, its organization or membership. The SSI does not allege that the PCU is designated by the United States as a terrorist organization. The SSI does not allege what thing(s) of "pecuniary value" were given to the PCU. In addition, the SSI alleges in the most general terms possible that the PCU:

> threatened violence, attempted violence, conspired to commit violence, and carried out acts of violence. These violent activities, which involved weapons, dangerous devices,

> firearms, and explosives, were carried out other than for MARSET's mere personal monetary gain. The goals included, among other things, advancing MARSET's control of his organization, ensuring his own liberty, and intimidating others into submitting to his will.

SSI at para. 26. As explained herein, the alleged conduct does not satisfy the requirement of either "terrorist activity" or "terrorism."

### *3. The Alleged Basis Of Jurisdiction*

The SSI also contains an assertion concerning the basis of jurisdiction in a federal court in the United States for conduct that took place entirely outside of this country. The Government alleges that jurisdiction exists in this case under 21 U.S. Code Section 960a because:

> (1) the prohibited drug activity and terrorist offense are in violation of the criminal laws of the United States, (2) the offense, the prohibited drug activity, and the terrorist offense occurred in and affected interstate and foreign commerce, and (3) after the offense conduct occurred, the offender was brought into and found in the United States.

The alleged assertion of jurisdiction in the SSI, however, cannot save Count One, because its application in this case violates defendant Sebastian Marset's right to due process.

## LEGAL ANALYSIS

### *1. The Due Process Clause Bars This Criminal Prosecution*

The Government does not wield unlimited power to bring criminal prosecutions in this country against foreign nationals who allegedly commit crimes with no nexus to the United States. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property without due process of the law." Thus, even when a

> criminal statute having extraterritorial reach is declared or conceded substantively valid under the Constitution, its enforcement in a particular instance must comport with due process. Some courts have, as a proxy for due process, required "a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.

United States v. Brehm, 691 F.3d 547, 552 (4th Cir. 2012).

This sufficient nexus requirement "ensures that a United States court will assert jurisdiction

only over a defendant who 'should reasonably anticipate being haled into court' in this country.'" United States v. Klimavicius-Viloria, 144 F.3d 1249, 1257 (9th Cir. 1998). The Second Circuit has adopted a test for determining whether an extraterritorial application of a criminal statute is consistent with due process, ruling that "there must be a **sufficient nexus between the defendant and the United States**, so that such application would not be arbitrary or fundamentally unfair." United States v. Yousef, 327 F.3d 56, 82 (2d Cir. 2003)(emphasis added).

In United States v. Al Kassar, 660 F.3d 108 (2d Cir. 2011), the Second Circuit specifically considered the limits imposed by the due process clause in a case charging a foreign national with criminal conduct outside of the United States. The Court of Appeals concluded that:

> for non-citizens acting entirely abroad, a jurisdictional nexus exists **when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests**.

Al Kassar, 660 F.3d at 118 (emphasis added).

In this case, the Government does not allege that the defendant's conduct was undertaken with the intention of harming the United States, its citizens, or its interests. Rather, even assuming *arguendo* the truth of the allegations, the conduct had no connection to this country whatsoever.

***2. The Defendant's Conduct Does Not Constitute Terrorist Activity Or Terrorism***

Count One requires proof that the defendant provided something of pecuniary value to a person or organization engaged in "terrorist activity" or "terrorism." The defendant's alleged conduct fails as a matter of law to satisfy either required element. The statutory definition of "terrorist activity" includes many acts that would readily be identified as terrorist in nature.

These include, *inter alia*, "highjacking or sabotage," or "assassination," or the use of a "biological agent, chemical agent, or nuclear weapon," or violence to compel a "government

organization" to take some action. The statute expressly excludes violence that is done for "personal monetary gain," from its definition.[3] In order to shoehorn the defendant's alleged conduct to meet the definition of terrorist activity, the SSI alleges that the defendant's motivation was not personal gain, but rather "control of his organization, ensuring his own liberty, and intimidating others into submitting to his will." SSI at p.9. The Court should reject this claim as a matter of law.

First, in the original Superseding Indictment the prosecution alleged a completely different rationale for the alleged violence. The prosecutors alleged that:

> During the course of the conspiracy, MARSET and SANTORO threatened violence against others in order to protect the carrying on of their drug trafficking and money laundering activities.

See DE 20; Superseding Indictment at para. 9. There is no principled or good faith reason to believe that the defendant's motivation for his alleged conduct changed between the time that the Superseding Indictment and Second Superseding Indictment were returned. Rather, the prosecutors simply modified the language of the Indictment in a transparent – and improper – attempt to bring the exact same conduct within the definition of "terrorist activity." This Court should not allow the prosecution to amend its theory of "intent" without any basis in fact.

---

[3] "Terrorist activity" defined As used in this chapter, the term "terrorist activity" means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following: (I) The highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle). (II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained. (III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18 ) or upon the liberty of such a person. (IV) An assassination. (V) The use of any— (a) biological agent, chemical agent, or nuclear weapon or device, or (b) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

8 U.S. Code 1182(a)(3)(B)(i)(I)

Second, the prosecutions' allegation that the defendant's alleged acts of violence were not done for his own "personal monetary gain" should be readily dismissed as a fiction. The Government contends that the actual goals were "advancing MARSET's control of his organization, ensuring his own liberty, and intimidating others into submitting to his will." SSI at para. 26. The SSI does not allege any reason to believe that these alleged goals had some motivation independent of furthering the defendant's own financial gain. The revisionist history offered by the prosecution also fails as a matter of common sense.

Finally, the defendant's alleged conduct does not even remotely satisfy the statutory definition of "terrorism," which means "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents." 22 United States Code Section 2656f(d)(2).

**CONCLUSION**

For all of the reasons set forth in this motion, the Court should dismiss Count One of the SSI because: (1) the United States has no jurisdiction over the alleged conduct; and (2) the prosecution has failed to allege a sufficient act to satisfy the statutory requirement of either terrorist activity or terrorism.

Respectfully submitted,

/s/ Sandi S. Rhee

Sandi S. Rhee
Counsel for the Defendant
10001 Georgetown Pike, #63
Great Falls, VA 22066
(202)285-8366
SandiRheeLaw@Gmail.com
VA Bar No. 47328

Robert Feitel

___________________________
Robert Feitel
1300 Pennsylvania Avenue, N.W
#190-515
Washington, D.C. 20004
202 255 6637 (cellular)
District of Columbia Bar 366673
*Pro Hac Vice*

Joseph King

___________________________
Joseph King
VA Bar #65632
King, Campbell, Poretz & Mitchell Pllc.
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 (o)
(703) 652-6010 (f)
jking@kingcampbell.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to Anthony Aminoff and Catherine Rosenberg, Assistant United States Attorneys for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314, and current defense counsel this 24th day of September, 2026.

/s/ Sandi S. Rhee

Sandi S. Rhee