UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

UNITED STATES :

v. : Case No. 1:23-CR-143

SEBASTIAN ENRIQUE MARSET CABRERA :

Defendant :

**DEFENDANT'S MOTION TO PRECLUDE**
**THE INTRODUCTION OF SKY ECC EVIDENCE**

## INTRODUCTION

The defense moves this Court to issue a ruling that precludes the prosecution from introducing into evidence at the trial of this case any electronic communications obtained from Sky ECC, a now defunct encrypted text messaging system. As explained herein, these communications were turned over to the United States through a Mutual Legal Assistance Treaty (MLAT) request to France, which participated in the search of Sky ECC computer servers. The defense expects that the Government plans to introduce the texts as foreign "business" records through a Certificate of a custodian – most likely the French law enforcement agent who provided the link to the data.

As explained in this motion, the Sky ECC data is not admissible as a business record because: (1) the text communications were written by Sky ECC subscribers and thus are not the company's "business records;" (2) a French law enforcement officer is not a proper "custodian of records" for Sky ECC because of lack of knowledge of the company's business records retention policies; and (3) the Sky ECC communications were not admissible as business records because there was insufficient evidence of the "origins or reliability" of the contents. United States v.

Gogic, 2025 WL 3042350 at *9 (E.D.N.Y.)(Azrack, J.). For all these reasons, the defense asks this Court to preclude their introduction and moves this Court *in limine* for the requested relief.

## THE INSTANT MOTION *IN LIMINE*

All evidence other than live testimony must be authenticated before admission into evidence at trial. Federal Rule of Evidence 901(a). This authentication requirement is “a condition precedent to admissibility,” meaning the Court must preliminarily determine whether the proponent has produced evidence sufficient for a reasonable jury to conclude that the item is what it is claimed to be. United States v. Vayner, 769 F.3d 125, 129 (2d Cir. 2014).

A motion *in limine* is a vehicle by which a party seeks “to exclude anticipated prejudicial evidence before the evidence is actually offered.” Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). Such motions are “designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.” Louzon v. Ford Motor Co., 718 F.3d 556, 561 (6th Cir.2013). Motions *in limine* “aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain evidence that one party claims is not admissible,” which allows the parties to prepare with a more complete understanding of the scope of the case. See United States v. Mosby, 626 F. Supp. 3d 847, 856 (D. Md. 2022).

In a scheduling Order entered in this case on July 2, 2026, the Court has established a November 11, 2025 deadline for motions in limine. ECF 102. Notwithstanding, the defense believes that this issue should be resolved as promptly as possible because it will have a significant impact on the defense preparations and investigation in this case.

## RELEVANT FACTUAL BACKGROUND

In May 2025, French authorities provided the Drug Enforcement Administration (DEA) a link to 6.5 terabytes of communications seized from Sky ECC by “Europol” (an investigative

agency of the European Union). Sky ECC is described as follows:

> Sky ECC was a subscription-based criminal messaging platform developed by the Canadian company Sky Global. The platform offered a series of features, including information exchange confidentiality (messages, photos, or voice messages) and user anonymity. Additionally, it offered: manipulation detection, remote deletion, as well as unprecedented security measures to protect the device, such as a panic function (allowing users to erase the device's content with a button) and a concealable app interface.

https://www.europol.europa.eu/how-we-work/operations/operational-taskforce-limit.

The Sky ECC records obtained from the French authorities and produced to the defense include thousands of pages of text messages. For example, one file identified by BATES number 51112 contains 6,453 pages of text messages in Spanish (or possibly other foreign languages). There are hundreds of such Sky ECC files in the discovery. Exhibit 1 is a redacted excerpt of the first four pages of one such "Extraction Report" from the Sky ECC warrant issued in Europe (filed under seal because it contains Protected Material).

To date, the prosecution has not identified which files, or portions thereof, it intends to introduce at a trial of this case, but it is clear in the context of the discovery provided in this case that the Government believes that the hearsay contents of the communications are admissible as substantive evidence against the defendant at the trial of this case.

## LEGAL ANALYSIS

### 1. The Sixth Amendment Confrontation Clause Prohibits The Introduction Of The Hearsay Sky ECC Communications

The Constitution and Federal Rules of Evidence impose limitations on the nature and type of evidence that is admissible during federal criminal trials. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Supreme Court has ruled that the Amendment thus prohibits the admission of out-of-court statements without an opportunity for

cross-examination. Crawford v. Washington, 541 U.S. 36, 68 (2004). The Clause:

> protects a defendant's right of cross-examination by **limiting the prosecution's ability to introduce statements made by people not in the courtroom**. . . . And so the Clause bars the admission at trial of an absent witness's statements—however trustworthy a judge might think them—unless the witness is unavailable and the defendant had a prior chance to subject her to cross-examination.

Smith v. Arizona, 602 U.S. 779, 783–84, 144 S. Ct. 1785, 1791, 219 L. Ed. 2d 420 (2024). (emphasis added). Accord Hemphill v. New York, 595 U.S. 140, 150 (2022)(the "Confrontation Clause requires that the reliability and veracity of the evidence against a criminal defendant be tested by cross-examination").

The Sixth Amendment prohibition on the admission of hearsay, however, permits a limited exception for business records or "records of a regularly conducted business." Business records are generally admitted through an appropriate "certification" by a custodian or records, with personal knowledge that the record:

> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice.

See, e.g., Federal Rules of Evidence 803(6); 902(11). Foreign business records have also been found admissible based upon an appropriate certificating pursuant to 18 United States Code Section 3505 subject to the same requirements of authenticity. See, e.g., United States v. Qualls, 553 F. Supp. 2d 241, 245–46 (E.D.N.Y. 2008).

The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and "[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision." Rock v. Huffco Gas & Oil Co., 922 F.2d 272, 279 (5th Cir. 1991).

For the reasons set forth herein, the Sky ECC communications obtained by the prosecution are not business records but rather are inadmissible hearsay.

### *2. The Communications Are Not Sky ECC Business Records*

First, the communications obtained by the prosecution are not business records of Sky ECC. Pursuant to 18 United States Code Section 3505, the records of a foreign "regularly conducted activity" is admissible if the following requirements are satisfied:

> (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
> (B) such record was kept in the course of a regularly conducted business activity;
> (C) the business activity made such a record as a regular practice. [1]

To satisfy the requirement, however, the proponent of the evidence – in this case – the prosecution must establish that:

> each participant in the chain which created the record—from the initial observer—reporter to the final entrant—must generally be acting in the course of the regularly conduct business. If some participant is not so engaged, some other hearsay exception must apply to that link of the chain.

Rambus, Inc. v. Infineon Techs. AG, 348 F. Supp. 2d 698, 706 (E.D. Va. 2004). This Circuit Court has unequivocally ruled that when the information contained in a "business record" is supplied by an "outsider," an "essential link in the trustworthiness chain fails, just as it does when the person feeding the information does not have firsthand knowledge." 2 *McCormick on Evidence,* § 290, at 274 (4th ed.1992). The following is an example of application of the rule regarding a business record:

> *All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result,* or in short "in the regular course of business." If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance

[1] The business record exceptions contained in Federal Rule of Evidence 803(6) contains the same requirements for admissibility.

> of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not.

United States v. Patrick, 959 F.2d 991, 1001 (D.C. Cir. 1992). See also United States v. Lieberman, 637 F.2d 95, 101 (2d Cir.1980)(Western Union record containing information concerning receiver's identity was not part of business record and inadmissible as hearsay).

Two other cases apply this rule in a very similar factual setting to the instant circumstances.

In United States v. Hunt, 534 F. Supp. 3d 233, 254 (E.D.N.Y. 2021), the Court precluded the Government from introducing the contents of the defendant's social media messages as business records. In reasoning that applies with equal force in this case, the district court ruled that:

> to the extent the Government seeks to authenticate and admit the *content* of messages or videos on Defendant's social media accounts via certifications, such items are not self-authenticating business records that require no extrinsic evidence of authenticity other than a certification from a custodian to be admitted.

Hunt, 534 F. Supp. 3d at 254.

Similarly, in United States v. Cone, 714 F.3d 197, 219–20 (4th Cir. 2013), the Court of Appeals concluded that it was error in a fraud prosecution for the district court to admit emails sent to a business complaining that certain items were counterfeit. The Court held that

> While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling within the ambit of Rule 803(6)(B). "An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule." . . . . The district court's observation that the e-mails were kept as a "regular operation of the business" is simply insufficient on that basis alone to establish a foundation for admission under Rule 803(6)(B). Accordingly, because the e-mails could

not, on this record, be admitted under an exception to the hearsay rule, the district court's failure to give the limiting jury instruction was error.

Under the reasoning of all these cases, the Sky ECC messages created by customers of the service are not "business records" within the meaning of the applicable federal statutes. Rather, they are inadmissible hearsay that should not be admitted during the trial of this case.

### ***3. The Government Does Not Have A Proper Custodian Of Records***

The second basis to preclude the introduction of any Sky ECC data will be the failure of a proper custodian of records. The federal rules require that the person attesting to the reliability of the business records has a sufficient basis of personal knowledge. It is well settled that the "person who attempts to show that records qualify under this exception must have personal knowledge sufficient to do so. Hearsay based on what someone else told the witness is not sufficient." Supermedia LLC v. L. Firm of Asherson, 2013 WL 12113386, at *3 (C.D. Cal.). Put another way, as "Fourth Circuit precedent makes clear, the custodian or qualified witness must not only be familiar with the maintenance of the records, but also with how they are created." United States v. Ging-Hwang Tsoa, No. 1:13CR137 JCC, 2013 WL 5837649, at *3 (E.D. Va. Oct. 29, 2013).

Under the circumstances of this case, it does not appear that any employee of Sky ECC with knowledge concerning the business records retention practices of the company will be a government witness. Sky ECC was officially shut down in March 2021 by a joint task force of European law enforcement agencies who concluded that it "was extensively used for criminal activities, such as drug trafficking and money laundering." https://www.europol.europa.eu/how-we-work/operations/operational-taskforce-limit. Under the circumstances, it seems extraordinarily unlikely that any qualified employee of the defunct company would voluntarily testify in a criminal prosecution in the United States.

More likely, the prosecution plans to use a member of the French law enforcement agency who provided the link to the DEA to testify that the data was collected as the result of a search of the Sky ECC servers. Any such potential testimony, however, would be insufficient to establish sufficient *bona fides* as a custodian of records, which requires personal knowledge of the document retention policies of Sky ECC. In the absence of a Government proffer that such a witness is ready, willing and able to testify at the trial of this case, this Court should also preclude the introduction of any messaged obtained from Sky ECC.

***4. The Extraction Of The Sky ECC Data Was Unreliable***

Third and finally, there is recent precedent to establish that the manner in which the Sky ECC data was obtained by European law enforcement is not sufficiently reliable to permit the introduction of the data.

In United States v. Gogic, 2025 WL 3042350 (E.D.N.Y.), the defendant was charged in a multi-count indictment with crimes relating to international drug trafficking. The prosecution indicated its intention to introduce excerpts of electronic communications sent by the defendant to other co-conspirators over Sky ECC. *Gogic* at *1. at The Government requested the data via a Mutual Legal Assistance Treaty request to France, which then transmitted the data to the United States. The data included, *inter alia*, 179 folders that contained "a spreadsheet of messages from a single conversation thread, or chat between two or more Sky users." Id. at *2. These materials mirror the production of Sky ECC data in this case.

The prosecutors also produced a "Certificate of Authenticity" from a French law enforcement agent which stated that:

> the Sky Evidence was "collected by copying the requested information concerning the two specified SkyECC identifiers via the electronic storage medium that maintains the SkyECC data collected as part of the SkyECC data collected as part of the SkyECC investigation, and which is kept and maintained by law enforcement authorities[.]" (Id.)

> The Certificate further states that the Sky Evidence consists of "duplicates of original records as captured by European law enforcement authorities in the joint investigation of SkyECC" and was "generated by an electronic process or system that produces an accurate result."

Id. at *7.

The defense moved *in limine* to preclude the introduction of the Sky ECC data, arguing that the Government's potential witnesses could not adequately explain how the data was obtained. The Government argued that the data was admissible as a business record, but the district court disagreed, noting that "the Government has supplied virtually no substantive information—and certainly none from a qualified custodian—about the technical method by which the Sky Evidence was collected, decrypted or compiled. For these reasons, the Sky Evidence is simply not analogous to ordinary business records." Id. at *8.

Moreover, the Court concluded that there were reasons to doubt that manner in which the data was both obtained and then processed after it was seized, noting that:

> Here, in the absence of additional evidence concerning the underlying investigation, decryption, or recordkeeping practices, I find the Sky Evidence to be more analogous to a collection of chat room conversations copied and pasted into word processing files. . . . than a business record from a telecommunications company. . . .
>
> Accordingly, I preliminarily conclude that the Government may not admit the entire universe of Sky Evidence that they have marked as trial exhibits.

Id. at *9.

These exact concerns are present in this case. The Sky ECC data transmitted to the United Sates in this case derived from the same investigation as the data in *Gogic*. The Government does not appear to have a witness in this case that would be capable of testifying about manner in which the data was obtained, decrypted or stored. For that reason, this Court should likewise conclude that the Sky ECC evidence is not sufficiently reliable to be admitted at

the trial of this case.

## CONCLUSION

For all the reasons set forth herein, the Government cannot authenticate the Sky ECC messages and this Court should prohibit their introduction at the trial of this case.

Respectfully submitted,

/s/ Sandi S. Rhee
____________________________
Sandi S. Rhee
Counsel for the Defendant
10001 Georgetown Pike, #63
Great Falls, VA 22066
(202)285-8366
SandiRheeLaw@Gmail.com
VA Bar No. 47328

Robert Feitel
________________________
Robert Feitel
1300 Pennsylvania Avenue, N.W
#190-515
Washington, D.C. 20004
202 255 6637 (cellular)
District of Columbia Bar 366673
*Pro Hac Vice*

Joseph King
________________________
Joseph King
VA Bar #65632
King, Campbell, Poretz & Mitchell Pllc.
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 (o)
(703) 652-6010 (f)
jking@kingcampbell.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to Anthony Aminoff and Catherine Rosenberg, Assistant United States Attorneys for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314, and current defense counsel this 24th day of August, 2026.

/s/ Sandi S. Rhee

Sandi S. Rhee