IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEBASTIAN ENRIQUE MARSET CABRERA,<br><br>Defendant. | Case No. 1:23-CR-143<br><br>Hon. Rossie D. Alston |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS COUNT ONE**

The defendant ran a massive drug trafficking organization that distributed cocaine around the world, laundered funds through the United States, bombed police stations, threatened DEA agents and prosecutors, and killed witnesses. As a result, he is charged in the Second Superseding Indictment in Count One with a conspiracy to violate 21 U.S.C. § 960a, commonly referred to as the narcoterrorism statute. The defendant moves to dismiss Count One arguing (1) that his crime lacks a sufficient nexus to the United States such that his prosecution here violates his due process rights, and (2) that the Court should make a pretrial determination that his motivation for committing egregious violent acts does not fit the definition of terrorist activity. Dkt. No. 109. Under well-established Fourth Circuit caselaw, the defendant's conduct easily passes muster under the Due Process clause, and the Court cannot possibly make a pre-trial factual determination about his motives; that is what his trial is for.

PROCEDURAL AND FACTUAL BACKGROUND

On March 7, 2024, a Superseding Indictment was returned charging the defendant with a conspiracy to launder money, in violation of 18 U.S.C. § 1956. Dkt. 20. On March 16, 2026, after

being expelled from Bolivia, the defendant made his initial appearance in the Eastern District of Virginia. Dkt. 63. On June 25, 2026, a 4-count, Second Superseding Indictment (SSI) was returned, charging the defendant with a conspiracy to violate 21 U.S.C. § 960a (narcoterrorism conspiracy), a conspiracy to violate the Maritime Drug Law Enforcement Act, in violation of Title 46, U.S.C. § 70503, 70506, the money laundering conspiracy, and a substantive money laundering violation. Dkt. 92.

The government produced the vast majority of discovery to defendant's prior counsel on or about May 5, 2026. Prior defense counsel provided the discovery to new defense counsel. The government also re-produced the discovery and made it available to defense counsel on or about July 30, 2026.[1] The government subsequently produced a second batch of materials on or about August 11, 2026. The discovery consists of voluminous bank records, recordings with co-conspirators and the defendant himself, text message conversations over various platforms, reports from foreign governments, and other items. While the majority of memoranda of witness interviews has not been produced at this time, such memoranda will be provided by the Jencks deadline. In addition, the government may learn of additional discovery as it interviews witnesses and will promptly disclose such materials.

As alleged in the SSI, the charges relate to the defendant's role leading a massive international drug trafficking organization that distributed drugs all over the world. While much of this cocaine went to Europe, the government anticipates introducing evidence at trial that the defendant sent cocaine to the United States. In order to distribute his cocaine, the defendant used container ships and unflagged go-fast vessels, among other methods. He also partnered with other organizations to facilitate his drug trafficking, including Colombia's Clan del Golfo and Brazil's

[1] Reproduction was necessary in part because the government changed discovery processing systems, and new Bates numbers were applied to previously produced discovery.

Primeiro Comando da Capital (PCC), both recently designated as foreign terrorist organizations by the U.S. Secretary of State. His organization laundered millions of his proceeds through U.S. financial institutions. And the defendant used brutal violence to maintain control. He murdered individuals he suspected of cooperating with law enforcement. He threatened or killed those members of law enforcement that he could not corrupt, even threatening a U.S. DEA agent. And he bombed a Uruguayan police station so that Uruguayan law enforcement would learn to respect him.

The defendant has been the subject of an international manhunt for years. Paraguay made public a red notice seeking the defendant's arrest for drug trafficking crimes in August 2023. Int'l Crim. Police Org. [INTERPOL], *Red Notice: Marset Cabrera, Sebastian Enrique*, https://www.interpol.int/How-we-work/Notices/Red-Notices/View-Red-Notices#2022-12874. The defendant was aware of his fugitive status; he released videos mocking South American law enforcement for failed attempts to apprehend him. *See, e.g.,* Vanessa Buschschluter, *Sebastián Marset: Fugitive Sends Video Thanking Police for 'Tip-Off,'* BBC News (Aug. 3, 2023), https://www.bbc.com/news/world-latin-america-66393357.

## DISCUSSION

### A. Due Process Analysis

In his motion to dismiss, the defendant contends that Count One must be dismissed because his conduct lacks sufficient nexus to the United States. Federal Rule of Criminal Procedure 12(b) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). In other words, Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. McLeal*, 726 F. Supp. 3d 519, 529 (E.D. Va.

2023) (citing *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017)); *United States v. Aleynikov,* 676 F.3d 71, 75–76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."). "The sufficiency of an indictment and the interpretation of a federal statute are both matters of law" reviewable on a motion to dismiss an indictment. *Aleynikov*, 676 F.3d at 76. However, "[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial[,] … the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Alfonso,* 143 F.3d 772, 777–78 (2d Cir. 1998); *United States v. Horma*, 2018 WL 4214136, at *5 (E.D. Va. 2018) (parties must proffer, stipulate, or otherwise not dispute the pertinent facts for the motion to stand ripe for consideration). "[T]he government is not required to set out the nature of the nexus to the United States in the indictment itself." *United States v. Ahmed*, 94 F. Supp. 3d 394, 425 (E.D.N.Y. 2015) (citing *United States v. Yousef*, 750 F.3d 254, 260 (2d Cir. 2014)); *United States v. Hayes*, 99 F. Supp. 3d 409, 422 (S.D.N.Y. 2015) (noting near impossibility for Court to undertake the detailed factual analysis required for jurisdiction and nexus determinations pre-trial).

Contrary to the defendant's assertions, his conduct is exactly the kind that Congress intended to be prosecuted when it passed 21 U.S.C. § 960a. The government believes it proffers sufficient facts in this response for the Court to outright deny the defendant's motion; alternatively, the Court can deny the motion as untimely and wait for the trial record to be developed.

1. *Background on 21 U.S.C. § 960a and its extraterritorial application*.

"As a general proposition, Congress has the authority to enforce its laws beyond the territorial boundaries of the United States." *United States v. Brehm*, No. 1:11-cr-11, 2011 WL 1226088, *4 (E.D. Va. Mar. 30, 2011) (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248

(1991)); *United States v. Ojedokun*, 16 F.4th 1091, 1102 (4th Cir. 2021) ("It is well established … that Congress may apply its laws beyond the shores of the United States."). Presumptions against extraterritoriality may be overcome by an "affirmative and unmistakable" instruction that the statute at hand does in fact apply to foreign conduct. *See RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016).

Congress spoke clearly that Section 960a should apply extraterritorially. *See, e.g.,* 21 U.S.C. § 960a(b)(5) (noting that jurisdiction is appropriate "even if the conduct required for the offense occurs outside the United States."). The legislative history confirms Congress intended to sweep very broadly. During the floor debate in the U.S. House of Representatives, one member stated, "[I]t will no longer be necessary for our overworked DEA and other law enforcement agencies abroad to be looking for a U.S. nexus to illicit drug shipments and drug traffickers who are engaging in this deadly trade which supports global terrorism." 151 CONG. REC. H6292 (daily ed. July 21, 2005) (statement of Rep. Hyde).

Section 960a prohibits engaging in drug trafficking activities that would be punishable under 21 U.S.C. § 841 if committed within the jurisdiction of the United States, or attempting or conspiring to do so, knowing or intending to provide, directly or indirectly, anything of pecuniary value to a person or organization that has engaged or engages in terrorist activity or terrorism. The statute provides five bases for jurisdiction. *See* 21 U.S.C. § 960a(b). The five bases are:

> **(1)** the prohibited drug activity or the terrorist offense is in violation of the criminal laws of the United States;
>
> **(2)** the offense, the prohibited drug activity, or the terrorist offense occurs in or affects interstate or foreign commerce;
>
> **(3)** an offender provides anything of pecuniary value for a terrorist offense that causes or is designed to cause death or serious bodily injury to a national of the United States while that national is outside the United States, or substantial damage to the property of a legal entity organized

under the laws of the United States (including any of its States, districts, commonwealths, territories, or possessions) while that property is outside of the United States;

**(4)** the offense or the prohibited drug activity occurs in whole or in part outside of the United States (including on the high seas), and a perpetrator of the offense or the prohibited drug activity is a national of the United States or a legal entity organized under the laws of the United States (including any of its States, districts, commonwealths, territories, or possessions); or

**(5)** after the conduct required for the offense occurs an offender is brought into or found in the United States, even if the conduct required for the offense occurs outside the United States.

While only one basis need be satisfied, the government anticipates establishing at trial that at least three of the jurisdictional bases are met, as alleged in the SSI. First, that the defendant's activities were in violation of the criminal laws of the United States, including in violation of Title 46, U.S.C., §§ 70503, 70506 (Maritime Drug Law Enforcement Act), and Title 21, U.S.C. §§ 959, 963 (International Distribution of Drugs) and 841, 846 (Drug Distribution), and Title 18, U.S.C. § 111 (Assaulting, Resisting, or Impeding Certain Officers or Employees). Second, that the prohibited conduct occurred in or affected interstate or foreign commerce, as the defendant laundered millions of dollars through the United States financial system. Third, after the conduct required for the offense occurred, the offender was brought into or found in the United States. Here, the defendant was brought to the United States on money laundering charges, and then later the 21 U.S.C. § 960a charge was added.

*2. Application of the Due Process Clause*.

For non-citizens acting entirely abroad, the Due Process Clause of the Fifth Amendment can impose limits on the United States' authority to enforce its laws beyond its territorial boundaries. *United States v. Brehm*, 691 F.3d 547, 552 (4th Cir. 2012) ("[T]he enforcement of an extraterritorial statute in a particular instance must comport with due process."). As the D.C.

Circuit noted, "the animating principle governing the due process limits of extraterritorial jurisdiction is the idea that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964)). However, "[w]here Congress expressly intends for a statute to apply extraterritorially, … **the burden is a heavy one** for a defendant seeking to show that extraterritorial application of the statute violates due process." *United States v. Epskamp*, 832 F.3d 154, 168 (2d Cir. 2016) (emphasis added); *United States v. Hayes*, 99 F. Supp. 3d 409, 422 (S.D.N.Y. 2015) (cases in which the extraterritorial application of a federal criminal statute has been actually deemed a due process violation are "exceedingly rare," and a defendant's burden "is a heavy one") (quoting *United States v. Ali*, 718 F.3d 929, 944 n. 7 (D.C. Cir. 2013)). As discussed above, Congress clearly intended for 21 U.S.C. § 960a to be applied extraterritorially.

The Fourth Circuit has noted that some courts have, as a proxy for due process, required "a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *Brehm*, 691 F.3d at 552; *United States v. Murillo*, 826 F.3d 152, 156 (4th Cir. 2016). The defendant has not met his heavy burden to show that Count One is either arbitrary or fundamentally unfair.

i. Arbitrariness

"[I]t is not arbitrary to prosecute a defendant in the United States if his 'actions affected significant American interests'—even if the defendant did not mean to affect those interests." *Murillo*, 826 F.3d at 157 (quoting *Brehm*, 691 F.3d at 552). Here, the defendant's actions clearly affected significant American interests. The defendant laundered millions of dollars in drug proceeds through U.S. banks that allowed him to continue running his drug empire and fund his

terror activities. The United States is entitled to ensure that its financial institutions do not become clearinghouses for criminals. *See United States v. All Assets Held at Bank Julius Baer & Co*., 571 F. Supp. 2d 1, 12 (D.D.C. 2008); *United States v. Prevezon Holding, Ltd.,* 251 F. Supp. 3d 684, 693 (S.D.N.Y. 2017) (noting that "international wire transfers do not merely 'ricochet' off of U.S. correspondent banks," but rather, use such banks "as indispensable conduits"). That alone is a significant American interest. In fact, other Courts have held that where funds "were transmitted through U.S.-based correspondent bank accounts, this conduct 'renders application of the … statute … domestic, so [a defendant] cannot be said to have acted entirely abroad." *United States v. Manuel Chang*, Case No.: 18-cr-681 (NGG), Dkt. No. 573 (E.D.N.Y. May 31, 2024) (quoting *United States v. Gasperini*, No. 16-CR-441 (NGG), 2017 WL 2399693, at *9) (denying due process challenge for wire fraud and other charges where defendant, the Minister of Finance for Mozambique, took bribe and kickback payments from funds raised by UAE-based holding company from investors worldwide).

In addition, as stated in the Maritime Drug Law Enforcement Act (MDLEA), "Congress finds … that trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501. The defendant engaged in exactly the kind of drug trafficking prohibited by Congress, most notably, as charged in Count Two of the Second Superseding Indictment, where he trafficked cocaine aboard a stateless vessel. Such drug trafficking, as found by Congress, affects significant American interests. *Id.* Alternatively, the Courts have held that no nexus is required for stateless vessels because they are considered an "international pariah … subject … to the jurisdiction of all nations." *United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir. 1995) (finding that there is no nexus requirement for vessels without

nationality); *United States v. Pahlawan*, 761 F. Supp. 3d 872 (E.D. Va. 2025) (noting that all federal courts of appeals have repeatedly disavowed the notion that constitutional due process requires the government to establish nexus for a stateless vessel). Beyond that, the government anticipates proving at trial that the defendant sent cocaine to the United States and conspired with people in the United States to distribute cocaine. *See United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) (for non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests). And again, conspiring with people within the U.S. would render the defendant's conduct not purely extraterritorial, meaning the due process inquiry would not even apply.

Furthermore, upon being contacted by the DEA to inform him of his money laundering charge and to recommend that he turn himself in, the defendant stated, "You all will never capture me … it's going to get ugly. Look, I'm not afraid of … the DEA … We are all mortals." The DEA agent, who was stationed in Colombia at the time, understood these comments to be a threat to his life if he didn't cease investigating the defendant. Threatening to harm American law enforcement stationed abroad is also a significant American interest. *See Murillo*, 826 F.3d at 157 ("United States has a significant interest in protecting its diplomatic agents while they represent this country abroad").

The defendant also partnered with other organizations, working with both Colombia's Clan del Golfo and Brazil's PCC, both of which have been designated as Foreign Terrorist Organizations ("FTOs"). *See, e.g.,* Dkt. No. 92 at ¶ 21. Below is a picture of the defendant posing next to a flag of Brazil's PCC:



The FTO classification requires a finding by the U.S. Secretary of State that "the terrorist activity or terrorism of the organization *threatens the security of United States nationals or the national security of the United States*." 8 U.S.C. 1189(a)(1)(C) (emphasis added). In addition, Clan del Golfo is responsible for trafficking many thousands of kilograms of cocaine into the United States. And, the defendant himself stated in his post-arrest interview with the DEA that Brazil's PCC smuggles approximately 80-90% of its weapons in Bolivia from the United States. The defendant's partnership with these FTOs that smuggle drugs to and weapons from the United States also affects significant American interests; his partnership allows these organizations to sell more drugs, buy more guns, and fund more terrorism. Working with other FTOs has been found to affect significant American interests. *See, e.g.,* Op. and Order, *United States v. Yousef*, No. 08–CR–1213 (S.D.N.Y. filed Aug. 23, 2010), ECF No. 23 (finding that United States has clear incentive "to prevent the arming of an international terrorist organization [FARC] which brazenly targets Americans with acts of violence and traffics narcotics into its borders."); *United States v. Antoine Kassis*, No. 1:25-CR-51 (E.D. Va.), ECF No. 64 (denying defendant's motion to dismiss where the defendant, a Syrian national located in Lebanon, conspired to trade arms for cocaine to the Colombian FTO, the ELN); *In re Sealed Case*, 936 F.3d 582, 594 (D.C. Cir. 2019) (Due process

challenge denied where defendant was "leader of an international drug trafficking organization that funded and provided weapons to terrorist groups … [he] can find no refuge in the due process clause").

Being located abroad does not and cannot give the defendant license to ship cocaine worldwide (even on the high seas and to the United States), to partner with foreign terrorist organizations (that by their nature do the U.S. harm), to launder his money through the U.S. financial system, and to threaten the DEA when they dared to investigate him. The defendant's offense thus affected significant American interests, and it is not arbitrary to prosecute him here.

ii. Fundamental Unfairness

Similarly, the charges against the defendant do not present issues of fundamental fairness. "Fair warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." *Murillo*, 826 F.3d at 157 (quoting *Al Kassar*, 660 F.3d at 119). "Simply put, a defendant is 'not ensnared by a trap laid for the unwary' when he has engaged in conduct that 'is self-evidently criminal.'" *Id.* (quoting *Brehm*, 691 F.3d at 554 (quoting *Al Kassar*, 660 F.3d at 119)). Smuggling cocaine is a self-evidently criminal act; narcotics trafficking is illegal in Paraguay, Uruguay, Bolivia, and Brazil, the countries where the defendant is known to have resided. So is murder, bombing police stations, and threatening public officials. The defendant was aware that he was wanted by law enforcement in these countries and others. In fact, he released public videos taunting law enforcement that they could not catch him. As a result, when the defendant was contacted by the DEA to suggest that he turn himself in, he told the Special Agent, "I am not interested in the charges. I am a criminal; I

will be a criminal all my life…" This is someone who knew that he was subject to prosecution somewhere—probably in most of the world.

iii. Treaties

Separate and apart from the arbitrary or fundamentally unfair framework, Courts have acknowledged that treaties can provide '"global notice that certain generally condemned acts are subject to prosecution by any party to the treaty,' and that 'the Due Process Clause demands no more.'" *United States v. Knowles*, 197 F. Supp. 3d 143, 163 (D.D.C. 2016) (quoting *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013)) (finding that drug trafficking with no connection to the U.S. but done aboard a U.S.-registered aircraft comported with Due Process); *United States v. Shi*, 525 F.3d 709 (9th Cir. 2008).

One of the terrorist acts that the government intends to prove is that the defendant caused a grenade to be detonated at a Uruguayan Police Station. The International Convention for the Suppression of Terrorist Bombings ("Terrorist Bombing Convention") prohibits the discharge or detonation of an explosive device in a state or government facility. Terrorist Bombing Convention Art. 2. State parties are bound to establish jurisdiction over offenses where the alleged offender is present in its territory. *Id.* at Art. 6. That is the case here. Both Uruguay and the United States are parties to the convention, and the defendant, after being brought to the U.S. on money laundering charges, was present in this country. The defendant is thus deemed to have "fair notice" that his conduct can be prosecuted by any state signatory. *Shi*, 525 F.3d at 723; *see also United States v. Rezaq*, 134 F.3d 1121, 1130 (D.C. Cir. 1998) (highjacker of foreign airplane "found in United States" even when he was forcibly brought to the United States to stand trial on the highjacking charges); *United States v. Yunis*, 924 F.2d 1086, 1092 (D.C. Cir. 1991).

Similarly, the United Nations Convention against Illicit Traffic in Narcotic Drugs and Psychotropic Substances ("Convention Against Drug Trafficking") prohibits drug trafficking. Convention Against Drug Trafficking Art. 3. The treaty further establishes that each party to the treaty "may also take such measures as may be necessary to establish its jurisdiction over the offences … when the alleged offender is present in its territory." *Id.* at Art 4. Bolivia, Paraguay, Uruguay, Brazil and the United States are parties to this treaty. The defendant thus has fair notice that his conduct may be prosecuted by any state signatory.

Essentially, the defendant was engaged in universally condemned activities, shipping cocaine all over the world, while threatening, killing, or bombing those who would testify against him, investigate him, and prosecute him. *See Knowles*, 197 F. Supp. 3d at 165 ("universal condemnation, not some theory of universal jurisdiction" is the relevant inquiry). To prevent this kind of activity, the vast majority of the world has signed on to treaties to commit to prosecuting it. *See United States v. Bodye*, 172 F. Supp. 3d 15, 24 (D.D.C. 2016) (where U.S. and countries with reasonable connection to the case agree via treaty that it would be appropriate to prosecute the alleged conduct, a defendant cannot complain that the risk of being haled into U.S. court was unknowable"). The defendant lived, for years, as a fugitive from countries that were signatories to these treaties. He taunted law enforcement as he slipped between countries, before he was finally caught and expelled to the United States, which is also a signatory to these treaties. Now that he is being prosecuted here in the United States, he cannot claim a due process violation. On the contrary, these treaties contemplate that the United States will fully prosecute the defendant now that he is present in our territory.

## B. The Defendant's Arguments about the Motives for his Violence are Not Appropriate for a Rule 12 Motion

In his motion to dismiss, the defendant contends that Count One must be dismissed because he denies that he possessed the requisite mental state. In seeking such relief to charges properly returned by the grand jury, the defendant essentially contends that the evidence in the case would not support conviction on Count One. Through a series of arguments, the defendant invites the Court to adopt his view of the facts of the case and examine, through his eyes, the evidence behind the charges. Such an invitation, however, is improper, particularly at this pretrial stage where the indictment properly sets forth the crimes charged. Accordingly, the defendant's motion should be denied.

### 1. Legal Framework

An indictment is sufficient if it (1) contains the elements of the charged offense and fairly informs a defendant of the charges against him, and (2) enables him to plead double jeopardy in defense of future prosecutions for the same offense. *See, e.g.*, *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011); *United States v. Quinn*, 359 F.3d 666, 672 (4th Cir. 2004) (citing *Hamling*); *United States v. Sutton*, 961 F.2d 476, 479 (4th Cir. 1992) (citing *Hamling*).

Federal Rule of Criminal Procedure 7(c)(1) merely directs that an indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The indictment must include every essential element of the offense. *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). In general, it is "sufficient that an indictment set forth the offense in the words of the statute." *Id.* (internal quotation marks omitted). In fact, the Fourth Circuit has upheld as sufficient indictments that did not allege specific acts in violation of cited

statutes. *See e.g., United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1046-47 (4th Cir. 1987); *United States v. Amend*, 791 F.2d 1120, 1125 (4th Cir. 1986).

If the indictment meets this standard, it "is valid on its face" and the Court may not "review the sufficiency of evidence supporting" the indictment because a valid "indictment returned by a legally constituted and unbiased grand jury" is "enough to call for trial of the charges on the merits." *United States v. Wills*, 346 F.3d 476, 488-89 (4th Cir. 2003). When considering a defense motion to dismiss an indictment, the district court must then accept as true the factual allegations as they are set forth in the indictment. *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (citing *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)). The Court "may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). An indictment "will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to the charge the offense." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009). Thus, all that is required at this stage is for the indictment to sufficiently plead the elements of the offenses charged.

Applying this well-settled authority to the Second Superseding Indictment in this case, this Court should reject the defendant's complaints about Count One. The defendant does not contend that Count One fails to track the statutory language. Instead, the defendant asserts that he had a different motive that would make the particular charge inapplicable to him. This is an issue for trial—not for a pre-trial motion. "A district court may dismiss an indictment under Rule 12 'where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial.'" *Id.* (citing *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)); *see also Bergrin*, 650 F.3d at 265 ("A ruling on a motion to dismiss is not . . . a permissible vehicle for addressing the sufficiency of the

government's evidence.") (citations omitted); *United States v. DeLaurentis*, 230 F.3d 659, 660-661 (3d Cir. 2000) (same). Indeed, the "government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *DeLaurentis*, 230 F.3d at 661.

2. <u>21 U.S.C. § 960a</u>

By its plain terms, a violation of 21 U.S.C. § 960a contains the following essential elements:

1) That there was a conspiracy between two or more persons to unlawfully and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance;

2) That the defendant knew of this conspiracy, and knowingly and intentionally became a part of this agreement or conspiracy;

3) That the defendant knew or intended to provide something of pecuniary value to any person or organization that has engaged or engages in terrorist activity or terrorism;

4) That the defendant had knowledge that the person or organization has engaged or engages in terrorist activity or terrorism; and

5) That a jurisdictional element is satisfied.

Terrorist activity, as defined in 8 U.S.C. § 1182(a)(3), means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following:

(I) The highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

(II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental

organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

(III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18) or upon the liberty of such a person.

(IV) An assassination.

(V) The use of any— (a) biological agent, chemical agent, or nuclear weapon or device, or (b) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

The SSI clearly sets forth each element of the charge, and even includes supporting facts in the General Allegations section. The defense does not deny that the charge is properly alleged; it simply asserts that the offense cannot be proven. *See Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (a district court must accept the factual allegations in the indictment as true in ruling on a motion to dismiss); *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003) (district court "lack[s] authority to review the sufficiency of the evidence supporting the indictment."). Defense's principal argument is that the First Superseding Indictment alleged that the defendant threatened violence to carry on his drug trafficking, and therefore the government cannot later allege he carried out violence for other reasons. The defense does not bother to reckon with the fact that there are specific acts of violence plead in the SSI that are not listed in the First Superseding Indictment. It does not bother to consider that in the time that elapsed from the First Superseding Indictment to the SSI that the government continued to investigate, develop witnesses, send MLATs, and review evidence. It does not even examine any specific act of violence that is alleged

in the SSI. The defense simply and baselessly impugns the prosecution's motives as unprincipled and lacking good faith, and then asks the Court to reject the Grand Jury's findings that the defendant intended to provide anything of pecuniary value to an organization that engaged in terrorist activity or terrorism. The request is without a basis in law or fact.

Their second argument, closely related to the first, is that the "SSI does not allege any reason to believe" that the violence was carried out for anything other than personal monetary gain. Dkt. No. 109 at 7. The government disagrees; the SSI plainly lists acts of violence or threatened violence that have a motivation other than mere personal monetary gain, such as bombing a police station and threatening a prosecutor. And the Grand Jury made a specific factual finding that the Marset DTMLO carried out violent acts for reasons other than the defendant's mere personal monetary gain. Dkt. No. 92 ¶ 26. But more importantly, an indictment need not contain references to all of the evidence that the government will present at trial. It therefore cannot be claimed that an indictment is infirm for that which it does not contain, so long as the offenses are properly pled and proper notice is given.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion to dismiss. Count One has a sufficient nexus to the United States such that the defendant's prosecution here is not arbitrary or fundamentally unfair. His actions affected significant American interests, and his activities were admittedly criminal such that he knew he was subject to prosecution somewhere. Alternatively, international treaties provided global notice that his activities were universally condemned and subject to prosecution by any signatory; when he is apprehended after years as a fugitive, he cannot then hide behind the due process clause. Lastly, the defendant's bare allegation that all his violent activities were only about his personal monetary gain, or otherwise outside the

ambit of "terrorist activities" as defined by law, is a question for a jury to decide or one that may be appropriate for consideration at a Rule 29 motion. It is not ripe for consideration now.

Respectfully submitted,

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

Date: September 7, 2026

By: /s/

Anthony T. Aminoff
Catherine Rosenberg
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3700
Anthony.Aminoff@usdoj.gov
catherine.rosenberg2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/
Anthony T. Aminoff
Assistant United States Attorney