UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | Case No. 1:23-CR-143 |
| SEBASTIAN ENRIQUE MARSET CABRERA | : | |
| Defendant | : | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR OF THE SECOND SUPERSEDING INDICTMENT**

## INTRODUCTION

The Government alleges that a wire transfer sent from a bank in Portugal on February 18, 2021, to a bank in China, which transited through a "server" located in Richmond, Virginia, constitutes a "transaction" that establishes an essential element of the international money laundering charges contained in Counts Three and Fourt of the Second Superseding Indictment to create venue in this jurisdiction. For all the reasons explained herein, that is incorrect.

First, the prosecution keeps changing its theory both as to: (1) what role the Richmond server played in the transfer, if any; and (2) who initiated the wire transfer. The Government's opposition also relies upon facts outside of the four corners of the SSI and thus, this Court must either grant the defense motion to dismiss count three and four as a matter of law or conduct an evidentiary hearing. This would conserve judicial resources by avoiding a trial on charges that do not have any connection with this jurisdiction to establish venue.

## RELEVANT FACTS

### *1. The Wire Transfer of February 18, 2021*

The SSI alleges that on (or about) February 18, 2021, co-defendant Santoro directed a

group of money launderers to send a wire of approximately $31,800.00 from Novo Banco in Portugal, to a company with a bank account in China. The SSI further alleges that the Bank of America server located in Richmond, Virginia, "processed" the transaction. SSI at para. 20.

In its Opposition to the motion to dismiss, the Government acknowledged, however, that a Bank of America server located in Levittown, Pennsylvania was the "primary" server on February 18, 2021. To avoid the consequence of this failure of venue, the prosecution now contends that the bank transfer did not "settle" until February 22, 2021, and that the Richmond, Va. server went into rotation on February 19, 2021. The prosecution also alleged that

> typically, banks conduct transactions by sending electronic messages detailing who is paying and how much. The receiving bank updates its ledger, debiting money or adding credit while the transaction is pending."

Gov. Opp. at p. 3. None of these facts are alleged in the SSI and none of them are verified.

The defense has reviewed the bank reports generated in connection with this wire transfer, which state that the request entered the banking system at 5:41 a.m. on February 18, 2021, at which time the bank server was located in Pennsylvania. There is nothing in the records indicate that the bank's server rotation protocols affected which server was responsible for transmitting the data involved in this transaction.

Moreover, the Opposition claims that "the government has been informed by Bank of America that the Richmond server processed the transaction," but the prosecution has refused to provide the defense with the: (1) location of the server; (2) the name of the person who provided this information; and (3) the routes of any of the other two hundred and two (202) wires allegedly sent from Europe to Asia.

Likewise, the prosecution has repeatedly changed its public position as to "who" organized and ordered the February 18, 2021 wire transfer in its pleadings. In the Second Superseding Indictment, the prosecution alleged that at "SANTORO's direction, UCC-1 wired $31,800.00 from

the bank in Portugal to the bank in China. SSI at paras. 2, 20. UCC-1 was identified as a Colombian citizen who was allegedly involved in the importation of cocaine into Europe.

In co-defendant Santoro's signed *Statement of Facts*, however, the Government alleged that the February 18, 2021, wire transfer was done by a different co-conspirator, identified as "CC-1," who is a Brazilian citizen and who "had connections to approximately seven businesses in Europe that were willing to accept the illegal narcotics proceeds and then make transfers to accounts that were determined by the defendant [SANTORO]." The size of the February 18, 2021 wire in the Statement of Facts was also different, as the stated amount was $31,716.99. See ECF 45 at paras. 6, 8, 9.

Finally, the Government's Opposition to the motion to dismiss Counts Three and Four states that Santoro used yet another person, now identified as "UCC-3" to pick up bulk cash in Europe and that this person "initiated wire transfers at Santoro's direction." Gov. Opp. at p. 2.

In the end, the prosecution continues to change its theory as to who was responsible for the February 18, 2021, wire transfer. Under the circumstances, there is no principled factual basis to conclude that it was done at the defendant's behest.

## LEGAL ANALYSIS

Under the Fourth Circuit's recent and controlling decision in United States v. Mosby, 143 F.4th 264, 275 (4th Cir. 2025), venue is only proper in a jurisdiction where an "essential element" of the offense took place. As an initial matter, by its own admission, it does not appear that the Government can prove that there was any contact between the February 18, 2021, wire transfer and the Eastern District of Virginia, since the "primary" server on that day was located in Pennsylvania.

The Government has the burden of proving venue by establishing that an essential element of the offense took place in this jurisdiction. There is no allegation in the SSI – and no evidence before the Court – as to: (1) what data transited through the server; (2) when the data transited; (3) in which directed the data moved; and (5) whether and how the data was relevant to the wire transfer. The prosecution has refused to provide the defense with information necessary to respond to the Government's contention.

Based upon the record before this court it is clear that even if the server in Richmond, Virginia was somehow involved in the transfer of data, it was entirely coincidental and unforeseen by anyone – UCC-1, CC-1, or UCC-3 – allegedly involved in the wire transfer. The Government has acknowledged that the server was not physically located in one of the correspondent banks involved in the wire transfer, making its involvement even more ephemeral and coincidental.

The cases relied upon by the prosecution do not support the conclusion that an essential element of the offense took place in this jurisdiction. In United States v. Day, 700 F.3d 713, 727 (4th Cir. 2012), for example, the defendant made phone calls in furtherance of the conspiracy while located in the Eastern District of Virginia. In United States v. Johnson, 510 F.3d 521, 523 (4th Cir. 2007), the defendant intentionally sent a financial report to the Securities and Exchange Commission, whose servers were located in Alexandria. These intentional contacts with the Eastern District of Virginia stand in total contrast to the unexplained connection between the "server" in Richmond and the wire transfers, which originated out of the United States and were destined for banks also located outside of this country. The prosecution's reliance on United States v. Booth, 2024 WL 911854 (2d Cir. Mar. 4, 2024) is likewise unavailing because: (1) that decision involved a wire transfer involving the bank itself, rather than some remote server; and (2)

the defendant "assumed" wire transfers could establish venue. Id. at *1. In this case, the defense categorically rejects the argument that a wire transfer is a sufficient essential act as to create venue.

Finally, the defense does not agree that the February 18, 2021, transaction (or any other wire transfer) was "in furtherance" of the alleged conspiracy charged in this case. Gov. Opp. at p. 11. Based upon the information provided to the defense, Santoro and his co-conspirators were transnational money launderers for more than one drug trafficking organization and nothing in the record before this Court establishes that they laundered money for defendant Marset in this transaction. In the same analytical manner, the *Pinkerton* theory relied upon by the prosecution in Count Four is irrelevant to the instant motion because it pertains to criminal liability, not venue. Given the Government's shifting theory as to which person conducted the wire transfer, venue does not lie for the substantive money laundering charge in Count Four, any more than it exists as to Count Three.

**CONCLUSION**

The record before this Court demonstrates that the prosecution has not – and cannot – establish even by a preponderance, that there was any conduct relating to the February 18, 2021 wire transfer which took place in this jurisdiction. Even if any *de minis* or ministerial conduct did take place, it did not satisfy the "essential element" requirement for venue. Finally, there are material disputed facts which prevent this Court from denying the motion to dismiss Counts Three and Four without an evidentiary hearing.

Respectfully submitted,

/s/ Sandi S. Rhee

Sandi S. Rhee
Counsel for the Defendant

10001 Georgetown Pike, #63
Great Falls, VA 22066
(202)285-8366
SandiRheeLaw@Gmail.com
VA Bar No. 47328

Robert Feitel

___________________________
Robert Feitel
1300 Pennsylvania Avenue, N.W
#190-515
Washington, D.C. 20004
202 255 6637 (cellular)
District of Columbia Bar 366673
*Pro Hac Vice*

Joseph King

___________________________
Joseph King
VA Bar #65632
King, Campbell, Poretz & Mitchell Pllc.
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 (o)
(703) 652-6010 (f)
jking@kingcampbell.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to Anthony Aminoff and Catherine Rosenberg, Assistant United States Attorneys for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314, and current defense counsel this 14th day of September, 2026.

/s/ Sandi S. Rhee