UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | Case No. 1:23-CR-143 |
| SEBASTIAN ENRIQUE MARSET CABRERA | : | |
| Defendant | : | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT ONE OF THE SECOND SUPERSEDING INDICTMENT**

**INTRODUCTION**

The Government's Opposition fails to rehabilitate the fundamental problems identified in the Motion To Dismiss Count One, which charges the defendant with committing "narco-terrorism" by providing something of "pecuniary" value to a group engaged in terrorist activity or terrorism.

First, because the Second Superseding Indictment (SSI) failed to establish any contacts between the defendant's alleged conduct and the United States to satisfy due process, the Government has invented a new theory, alleging for the first time that the defendant "sent cocaine to the United States" and "conspired with persons within the United States to distribute cocaine." Opp. at p. 9. No such allegation appears anywhere in the SSI or any other pleadings in this case and was emphatically not the theory of jurisdiction presented to the grand jury.

Second, the violent acts allegedly committed by the defendant in the SSI are excluded from the statutory definition of "terrorism" or "terrorist activity" because – according to the Government's own representation in the Superseding Indictment - they were committed for the defendant's own personal monetary gain. The prosecution should be estopped from taking

contrary positions in this litigation for its own convenience. See Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007)("[j]udicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court").

Third and finally, the SSI specifically alleges that the defendant provided "something of pecuniary value" to one alleged terrorist group: the Marset Drug Trafficking and Money Laundering Organization. The prosecution now argues in its Opposition that the defendant also provided support to two other "recently" designated terrorist groups, known as the *Clan de Golfo* (GDG) in Colombia and the *Primeiro Comando da Capital* (PCC) from Brazil. Opp. at pp. 2-3, 9-10. This shifting theory would result in an improper constructive amendment of the SSI and should be rejected by the Court.

**THE RELEVANT FACTS**

Count One of the SSI alleges that the defendant violated 21 U.S. Code Section 960a in a very specific way: (1) by committing the functional equivalent of domestic drug trafficking in violation of 21 U.S. Code 841(a) in a foreign country; and (2) by providing something of "pecuniary" value to the Marset Drug Trafficking and Money Laundering Organization (MARSET DTMLO), allegedly also known as the *Primer Cartel Urugauyo* ("PCU"). ECF at pp. 9-10. The statute requires that the group have engaged in either "terrorist activity" or "terrorism." As noted in the motion to dismiss Count One, the statute specifically excludes conduct engaged in "for mere personal monetary gain." Anything of pecuniary value is defined as "anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage." 18 U.S. Code Section 1958(b)(1).

The SSI does not identify any member of the PCU, its goals, or otherwise explain how the organization engaged in terrorist activity or terrorism. The PCU is not designated as a "foreign terrorist organization" by the United States and indeed, appears to be an invention designed solely as a basis to assert jurisdiction in this criminal case. The SSI does not identify – directly or indirectly – the something of "pecuniary value" that was allegedly provided by the defendant to the MARSET DTMLO.

The SSI alleges several violent acts committed by the MARSET DTMLO, including: (1) on May 9, 2020 a co-conspirator detonating a grenade in the parking lot of the Headquarters of the Uruguayan National Police's *Direccion General de Represion al Trafico Ilicito de Drogas* (General Directorate for the Suppression of Illicit Drug Trafficking) in Montevideo, Uruguay; (2) on May 10, 2020 a co-conspirator sending a threatening text message to an Uruguayan prosecutor involved in narcotics investigations that affected the MARSET DTMLO; (3) in September 2020, the defendant shot and killed a co-conspirator because MARSET believed the co-conspirator was plotting against him and the MARSET DTMLO; (4) on September 12, 2021 the defendant arranged for a co-conspirator to be killed because MARSET believed that co-conspirator to be cooperating with law enforcement; and (5) on March 26, 2025 the defendant threatened a DEA agent.

The first four of these events took place outside of the United States, with no connection to the money laundering conspiracy charge that forms the basis for the defendant's arrest in Peru and his ultimate transportation to the United States. The final allegation is also a gross misinterpretation of the defendant's conversation with the DEA agent.

**LEGAL ANALYSIS**

Count One of the SSI does not create jurisdiction over every act of drug trafficking in a

foreign country, nor does it sweep within its provisions every alleged act of violence committed in a foreign nation. In this case, the allegations in the SSI fail as a matter of law to confer jurisdiction in this court. The Government's last-minute efforts to advance arguments not contained in the SSI should be rejected.

***1. Drug Trafficking Predicate For Count One Violates The Defendant's Due Process Right***

The SSI alleges that the defendant violated 21 U.S. Code Section 960a by engaging in drug trafficking in a foreign country (either Belgium, Bolivia, Brazil, Colombia, the Netherlands, Paraguay, Peru, Portugal, Spain, or Uruguay), which would violate domestic drug trafficking law if committed in the United States. As explained in the motion to dismiss Count One, any such conduct, however, would not provide sufficient connection to the United States to satisfy due process.

In a last-ditch effort to create such a connection, the Government claims that it now has evidence that the defendant sent cocaine to the United States. To date, no discovery has been provided to support this allegation. This after the fact representation, however, does not save the SSI, which contains no such allegation and for which no evidence would have been presented to the grand jury. In addition, the Government now alleges that the defendant's alleged violation of the Maritime Drug Law Enforcement Act (MDLEA) charged in Count Two of the SSI creates a basis to assert jurisdiction in this court. Opposition at p. 6. The MDLEA, however, was not asserted in Count One as the basis for jurisdiction and to allow the Government to change its theory at this time would constitute an improper constructive amendment of the SSI.

In this Circuit "the jurisdictional element of a criminal statute "must be proved to a jury beyond a reasonable doubt. United States v. Perez, 150 F.4th 237, 242 (4th Cir. 2025). Thus, changing the alleged basis of jurisdiciton constitutes an impermissible constructive amendment

of the SSI. Moreover, constructive amendments "are structural errors, meaning that even under plain error review, constructive amendments must be considered "*per se*" prejudicial." United States v. Simmons, 11 F.4th 239, 269 (4th Cir. 2021).

Finally, the Government incorrectly asserts that there is jurisdiction over entirely foreign drug trafficking because it "occurred in and affected interstate and foreign commerce." Opp. at p. 6. The SSI does not allege that the defendant's drug trafficking "occurred in" interstate commerce and so as a matter of logic it could not have "affected" it. Thus, on its face, this interstate commerce alleged jurisdictional predicate fails. Similarly, the Foreign Commerce Clause likewise fails to establish jurisdiction.

The Supreme Court has held that the Foreign Commerce Clause granted Congress the power to "regulate commerce with foreign nations." See Board of Trustees University of Illinois.. v. United States, 289 U.S. 48, 56 (1933). Thus, only "those activities that have a 'substantial effect' **on commerce between the United States and foreign nations**" are covered by the provision. United States v. Davila-Mendoza, 972 F.3d 1264, 1271 (11th Cir. 2020)(emphasis added). The facts alleged in the SSI are insufficient to establish that the defendant's alleged conduct had any effect – let alone a substantial one – on commerce between the United States and a foreign nation.

Finally, this Court should reject the Government's argument that because the money laundering conspiracy allegedly moved millions of dollars through the United States banking system there is jurisdiciton of the "narco-terrorism" charge. This is the proverbial mixing of apples and oranges, as money laundering is not a predicate for Count One.

***2. The SSI Fails To Allege A Thing Of Pecuniary Value And The Allegations Of Violence Do Not Establish Terrorist Activity Or Terrorism***

In addition to the failure to establish a sufficient nexus between the United States and the

defendant's alleged criminal conduct, the SSI also fails to allege the other statutory requirement of 21 U.S. Code Section 960a.

In the first instance, the SSI does not allege what thing of "pecuniary value" was given by the defendant to the MARSET DTMLO. The government did not allege that the DTMLO received financial support, or anything else of value to satisfy this statutory requirement. That is not surprising, because the so-called DTMLO appears to be an invention designed to bring the defendant's conduct within the narco-terrorism statute.

Second, the acts of violence alleged in the SSI fall outside of the definition of "acts of terrorism" or "terrorism" as required by the statute. That is not surprising. The narco-terrorism statute was aimed at terrorist groups that use drug trafficking to finance their conduct. Thus, as DEA Special Agent Derek Smaltz testified before Congress:

> While terrorist organizations frequently cite ideological or religious beliefs as the motivation to recruit followers and gain power, they also become entrenched in criminal activity to support their efforts. This activity includes drug trafficking, money laundering, bribery/ corruption of government officials, weapons trafficking, cybercrime, and many other illegal activities.

Statement Before the House Subcommittee on Terrorism, November 17, 2011. See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.justice.gov/file/235661-0/dl?inline.

This is the converse of the situation presented in this case. By its own admission, the Government believes that the defendant is an international drug trafficker, but because he was not sending shipments to the United States, the prosecution needed to find some "hook" to charge him. Thus, the DEA informally labeled him as the leader of the MARSET DTMLO, which notably does not include the word "terrorism" in its title. But the Government cannot fit this square peg into the round hole.

First, the Government acknowledges that the statute excludes conduct done for "personal monetary gain." The alleged violence committed by the defendant appear designed wholly to maintain and protect his drug trafficking activities. That is why the Superseding Indictment alleges that the defendant and co-defendant SANTORO:

> threatened violence against others in order to protect the carrying on of their drug trafficking and money laundering activities.

See DE 20; Superseding Indictment at para. 9. The Government did not allege that the motive was to further terrorist activity or terrorism and should not now be allowed to reinvent the basis of the defendant's motivation for the sole reason of satisfying the narcoterrorism statute.

In the same way, this Court should reject the Government's belated effort to link the defendant's alleged conduct to the "recently" designated terrorist groups known as the *Clan de Golfo* and/or the *Primeiro Comando da Capital.* These groups were not identified as a predicate for Count One of the SSI and again, the prosecution should not be allowed to rely upon these groups to amend the charge against the defendant. Moreover, even these alleged connections do not satisfy the requirements of 960a or create a basis for jurisdiction in this court.

The *Clan de Golfo* was designated a Foreign Terrorist Organization on December 16, 2025 See https://www.state.gov/releases/office-of-the-spokesperson/2025/12/terrorist-designations-of-clan-del-golfo. The defendant's alleged connection to this group is the MDLEA charge contained in Count Two. That seizure, however, is alleged to have occurred on June 16, 2024, approximately a year before the designation existed. The *Clan de Golfo's* later designation cannot retroactively supply the fair notice required for due process purposes as to justify prosecting the defendant in this jurisdiciton.

Similarly, the *Primeiro Comando da Capital* was designated a Foreign Terrorist Organization on or about May 28, 2026. See https://www.state.gov/releases/office-of-the-

spokesperson/2026/05/terrorist-designation-of-comando-vermelho-and-primeiro-comando-da-capital. The conspiracy charged in Count One is alleged to have existed from 2018 through March 13, 2026 and the defendant made his initial appearance in this District on March 16, 2026. All of these events took place before the *Primeiro Comando da Capital* was designated by the United States.

A defendant cannot "reasonably anticipate being haled into court" in the United States, United States v. Klimavicius-Viloria, 144 F.3d 1249, 1257 (9th Cir. 1998), based on an alleged association with a "terrorist" organization that would not be so designated until after the conspiracy ended and after the defendant was already in custody in this District.

The Government's belated effort to link the defendant to these groups is confirmation that there is no valid basis to allege that there was support of terrorist activity or terrorism in this case. The prosecution's arguments to the contrary should be rejected.

The Government has mischaracterized the defendant's communication with a DEA agent on March 25, 2025 as a "threat." The full context places the comment into perspective. The DEA agent wrote to the defendant without warning, advising that there was a criminal case against him in the United States. The defendant responded that he had no charges and that he would "keep on running all my life, if necessary." The defendant then observed:

> You got the wrong person in your country, Colombia is full of snitches, but with you guys got it wrong with me. And leave my girlfriend alone because its going to get ugly. Look, I'm not afraid of that, nor the DEA or anyone, anyone. We are all mortals.

The defendant's statement did not expressly threaten the agent. The ending phrase "we are all mortals" is not a threat but rather is a self-reflexive observation; that is, the defendant is acknowledging his own mortality in the event that he remains a fugitive. The agent does not respond to this observation by commenting, "don't threaten me," and there is nothing in the

remainder of the conversation to even remotely suggest that the agent viewed it as a "threat," until it became a convenient argument for the Government. Notably, the defendant is not charged with threatening a federal law enforcement official, undoubtedly because the Supreme Court has ruled that only a "true" threat can be the predicate for such a prosecution. Elonis v. United States, 575 U.S. 723, 735 (2015). If the Government actually thought that the defendant had threatened the agent, he would no doubt have been charged with the offense. The prosecution's failure to do so fatally undermines the contention that the agent was threatened or that jurisdiction for the narcoterrorism charge exists as a result of this text message exchange.

Finally, the Government contends that Count One can proceed because the defendant was "brought" to the United States. Opp. at p. 6. The defendant's presence in this country, however, was predicated on a the money laundering conspiracy count, for which there is no venue.

**CONCLUSION**

For all of the reasons set forth in this motion, the Court should dismiss Count One of the SSI because: (1) the United States has no jurisdiction over the alleged conduct; and (2) the prosecution has failed to allege that anything of pecuniary value was given to a terrorist organization or that the defendant's alleged conduct constituted a terrorist activity or terrorism or that any other valid basis exists to sustain the charge.

Respectfully submitted,

/s/ Sandi S. Rhee

Sandi S. Rhee
Counsel for the Defendant
10001 Georgetown Pike, #63
Great Falls, VA 22066
(202)285-8366
SandiRheeLaw@Gmail.com

VA Bar No. 47328

Robert Feitel

____________________________
Robert Feitel
1300 Pennsylvania Avenue, N.W
#190-515
Washington, D.C. 20004
202 255 6637 (cellular)
District of Columbia Bar 366673
*Pro Hac Vice*

Joseph King

____________________________
Joseph King
VA Bar #65632
King, Campbell, Poretz & Mitchell Pllc.
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 (o)
(703) 652-6010 (f)
jking@kingcampbell.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to Anthony Aminoff and Catherine Rosenberg, Assistant United States Attorneys for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314, and current defense counsel this 14th day of September, 2026.

/s/ Sandi S. Rhee

__________________________________

Sandi S. Rhee