UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | Case No. 1:23-CR-143 |
| SEBASTIAN ENRIQUE MARSET CABRERA | : | |
| Defendant | : | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**<u>COUNT TWO OF THE SUPERSEDING INDICTMENT</u>**

## INTRODUCTION

The Government's Opposition to the motion to dismiss the drug trafficking on the high seas charge contained in Count Two of the Second Superseding Indictment does not resolve the jurisdictional and evidentiary problems the defense identified but merely deepens them. To sustain its theory of jurisdiction, the Government has presented the court with a hearsay declaration prepared nearly two years after the alleged drug seizure on June 24, 2024, written by an agent who did not participate in the interdiction operation and which contradicts both the contemporaneous Colombian police reports of the event and the Government's own discovery materials.

With respect to the irretrievable loss of 1,653 kilograms of purportedly controlled substance, which is the most central evidence for this count, the Government now contends that the DEA was not involved in the seizure, despite reports provided in discovery which indicate that the United States was deeply involved in organizing and affecting the seizure of the fast boat. The prosecution has no explanation for this contradictory timeline, which appears to be an effort to distance the United States from the destruction of evidence by a Colombian police unit that works for the DEA

For the reasons that follow, this Court should conduct an evidentiary hearing with respect to the jurisdictional questions that the MDLEA requires to be decided as a matter of law before trial. The Court should also require the prosecution to establish the circumstances surrounding the destruction of purported cocaine - the most critical evidence with respect to Count Two.

## LEGAL ANALYSIS

## I.
## THE MDLEA COUNT

### *1. Legal Framework Under The MDLEA For Resolving Jurisdiction*

The question of jurisdiction under the Maritime Drug Law Enforcement Act (MDLEA) is "a preliminary question of law to be determined solely by the trial judge," 46 U.S. Code Section 70504(a). The Government must prove jurisdiction by a preponderance of the evidence. United States v. Mcleal, 726 F. Supp. 3d 519, 529–30 (E.D. Va. 2023). Under the MDLEA's framework, an evidentiary hearing is necessary to resolve "factual disputes" between the parties. United States v. Munoz, 164 F.4th 105, 109 (3d Cir. 2026). Thus, in United States v. Alfonso, 104 F.4th 815, 819 (11th Cir. 2024), the district court conducted an evidentiary hearing to determine if a vessel was seized in the territorial waters that comprised the Exclusive Economic Zone (EEZ)of the Dominican Republic or took place on the "high seas." See also United States v. Zea-Luna, 2013 WL 440982 (E.D. Tex)(magistrate recommendation that court conduct an evidentiary hearing for Government to establish venue).

### *2. The Court Should Conduct An Evidentiary Hearing To Determine Jurisdiction*

In this case, a *bona fide* factual conflict exists as to the exercise of jurisdiction over the boat seizure. A contemporaneous Colombian police report (dated eleven days after the seizure) states that the vessel was stopped in "waters under Colombia's jurisdiction." Other reports provided in discovery reveal that this conclusion concerning jurisdiction was reviewed and then

confirmed by the Colombian national prosecutor's office. These materials were obtained by the Department of Justice pursuant to a Mutual Legal Assistance Treaty (MLAT) request. There is no reference in the reports to suggest that the Colombian government viewed the location of the boat seizure as subject to concurrent jurisdiction with the United States.

Indeed, the boat crew was charged in a Colombian court with violations of Colombian domestic law – a sure sign that Colombia believed it had the right to exercise unfettered jurisdiction over the alleged criminal conduct. The United States acceded to this exercise of sovereignty and more, the Department of Justice took no steps to charge the crew members under the MLEA in the United States. Because the suspected cocaine was lost, the crew members on the fast boat were released from custody.

The declaration of DEA Special Agent Mena, however, states that the vessel was intercepted 130 miles off the coast of Colombia, which the prosecution claims constitute the "high seas" within the meaning of the MDLEA. The prosecution acknowledges that S.A. Mena did not participate in the interdiction operation and that the contents of the declaration are based solely upon the secondhand information obtained from Colombia. Moreover, Colombia claims an "exclusive economic zone" (EEZ) that extends two hundred miles from its coast. See www.marineregions.org/gazetteer.php?p=details&id=8426. This places the seized vessel within the EEZ. Because the Government has the burden of proving jurisdiction, the question as to whether this location constitutes the "high seas" within the meaning of the MDLEA is a question that the Court should resolve after hearing from a competent witness and not merely on the representations in the Government's pleadings.

Finally, it is noteworthy that the United States claimed for the first time that it had jurisdiction to bring an MDLEA charge for the seizure almost two years after the event. This

determination was made in the context of a Superseding Indictment against a defendant who is not even alleged to have been aboard the vessel at the time and without any reports provided in discovery to even suggest the defendant had a connection to the boat. And the actual crew members have not been charged. All of these circumstances demand that the Court conduct an evidentiary hearing as to the issue of jurisdiction and provide the defense with the opportunity to confront the Government's witness(es).

## II
## THE DESTRUCTION OF ESSENTIAL EVIDENCE

### *1. The Destruction Of The Alleged Cocaine*

The defense's motion to dismiss Count Two was based on discovery materials produced by the Government, which unequivocally stated that the DEA's Cartegena, Colombia office "led an operation" with Colombian authorities that resulted in the seizure of the fast boat. The report noted that a "previous operation" involving a DEA informant had placed the GPS tracking device on the fast boat. The report stated that the DEA "maintained surveillance" of the boat and "coordinated" with the Colombian Coast Guard to interdict the vessel.

The Government's Opposition for the first time now asserts the opposite: that it was the Government of Colombia, using its own source, that placed the tracker on the boat, and that "the DEA had no involvement with the source or with the placement of the tracker." Opp. at p. 2. This constitutes a 180-degree change in the Government's position and bears directly on the appropriate remedy for the loss/destruction of the alleged cocaine seized from the boat. The prosecution now also claims that the destruction of the evidence was done independently by the Colombian Government pursuant to their own evidence protocols and thus, the United States prosecutors in this case have no responsibility for its loss. Opp. at pp. 8-9. A close reading of Special Agent Mena's Declaration, however, leaves much room for ambiguity. The agent wrote

that "I believe, under their standard evidence processing guidelines, that they would have likely destroyed the seized kilograms in this case." The affidavit does not contain any representations as to basis of the agent's knowledge concerning evidence destruction guidelines in Colombia and the obvious ambiguity in the Declaration compels the conclusion that this Court should order discovery as to this issue as to this issue and conduct an evidentiary hearing to determine the full circumstances surrounding the investigation and the loss of the evidence.

2. ***The Seizure Was The Result Of A Joint Venture Between The United States and Colombia***

The prosecution acknowledges that the "joint venture" doctrine would hold the United States responsible for the loss of the cocaine if there was "substantial participation" by the DEA in the seizure. Opp. at p. 8. The joint venture rule, however, also applies if "foreign officials conducting the search were actually acting as agents for their American counterparts." United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994). In this case, the original DEA reports unequivocally noted that the United States "led" the investigation, placed the GPS on the fast boat, monitored the vessel's progress, and coordinated with the Colombian Coast Guard to seize the vessel. All of these representations suggest a joint venture between the two governments.

It is well known that DEA has established what are referred to as "special investigative units" or SIUs in many foreign countries, including Colombia. The SIU agents receive special training and financial support from the DEA. As one DEA explained,

> Colombian police officers were paid a monthly "bonus" or stipend to use for their undercover operations. [The agent] explained that "[w]hen they conduct surveillances, they have to buy undercover clothes because they are not uniform cops. They use the money to buy lunches, when they are doing surveillances and covering meets, things like that, operational." [The agent] further noted on cross-examination that he "work[s] closely with [the Colombian unit] that gets the bonus."

United States v. Cabalcante, 2014 WL 12694161, at *6 (E.D. Tex. Feb. 18, 2014). The prosecution in this case acknowledged that the DEA Cartagena, Colombia office "provided some financial support to the Colombian government in the operation and received limited information related to the seizure after the fact." Gov. Opp. at p. 2.

In United States v. Karake, 281 F.Supp.2d 302 (D.D.C. 2003), the district court "ordered the production of discovery in order to permit the defendants to "demonstrate cooperation between the United States and Rwandan governments sufficient to reveal an agency relationship so that they can, if appropriate, raise constitutional challenges." 281F.Supp.2d at 309.

In this case, the defense similarly requests that the Court order the production of any relevant discovery that bears upon the relationship between the DEA and the Colombian authorities who: (1) participated in the stop of the fast boat; and (2) were involved in the destruction of the alleged drug evidence and whether any steps were taken to preserve it.

After a review of the information, the defense can make a principled decision as to whether it will request sanctions for the destruction of the evidence, which appears to have exculpatory value. See United States v. Elliott, 83 F. Supp. 2d 637, 643 (E.D. Va. 1999)(a "serious question that a reasonable law enforcement agent would recognize, before the [evidence] was destroyed, that it was of potentially exculpatory value").

**CONCLUSION**

For all of the reasons set forth in this motion, the Court should conduct an evidentiary hearing with respect to both the question of jurisdiction under the MDLEA and to order

additional discovery with respect to the joint venture relationship between the DEA and the Colombian law enforcement authorities involved in the seizure of the fast boat on June 24, 2024.

Respectfully submitted,

/s/ Sandi S. Rhee

______________________________

Sandi S. Rhee
Counsel for the Defendant
10001 Georgetown Pike, #63
Great Falls, VA 22066
(202)285-8366
SandiRheeLaw@Gmail.com
VA Bar No. 47328

Robert Feitel

_________________________

Robert Feitel
1300 Pennsylvania Avenue, N.W
#190-515
Washington, D.C. 20004
202 255 6637 (cellular)
District of Columbia Bar 366673
*Pro Hac Vice*

Joseph King

_________________________

Joseph King
VA Bar #65632
King, Campbell, Poretz & Mitchell Pllc.
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 (o)
(703) 652-6010 (f)
jking@kingcampbell.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to Anthony Aminoff and Catherine Rosenberg, Assistant United States Attorneys for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314, and current defense counsel this 24th day of September, 2026.

/s/ Sandi S. Rhee

Sandi S. Rhee