IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEBASTIAN ENRIQUE MARSET CABRERA,<br><br>*Defendant.* | Criminal No. 1:23-cr-143<br><br>Hon. Rossie D. Alston |

**GOVERNMENT'S RESPONSE**
**TO DEFENDANT'S SUPPLEMENTAL BRIEF**

The United States files this concise response to Defendant's Supplemental Brief (Dkt. 156).

## I. The Defendant's Motion to Suppress Statements Must Be Denied.

The United States has responded at length to the defendant's meritless factual and legal arguments that his post-arrest statements should be suppressed, and respectfully directs the Court's attention to the prior analysis found at Dkt. 128 at 16-19 and Dkt. 155 at 2-5. Below, the United States responds only to address specific erroneous allegations contained in the defendant's Supplemental Brief (Dkt. 156).

Before addressing these erroneous allegations, however, it is important to first recognize the context in which the parties are now litigating the admissibility of the defendant's voluntary post-arrest statement. The defendant's post-arrest statement is deeply incriminating and, as the defendant well knows, it would be devastating to him if admitted at trial. The United States understands why the defendant seeks to suppress that statement. But rather than objectively address the facts and legal consequences of the defendant's decision to speak to law enforcement, the defendant instead continues to lodge baseless attacks against law enforcement generally and DEA Special Agent Greisen specifically. The defendant claims in his Supplemental Brief (Dkt.

156) that Special Agent Greisen had a "Machiavellian mindset"; that he "blotted out the sun"; and that he engaged in improper tactics designed to illicit a false confession from the defendant. Nothing could be further from the truth. The Court heard from Special Agent Greisen twice during the pre-trial motions hearing. Defense counsel examined Special Agent Greisen at length and failed to illicit any facts that would support these claims. The record from the hearing speaks for itself, and the defendant cannot now attempt to impeach Special Agent Greisen's precise and clear testimony regarding the defendant's post-arrest statement by name calling and baseless allegations made after the fact.

Crucially, these baseless allegations by the defendant are part of a broader and concerning pattern. As alleged in the Second Superseding Indictment ("SSI"), Dkt. 92, the defendant has threatened and carried out numerous acts of violence with the goal, among other things, of intimidating others into submitting to his will. *See* SSI ¶ 26. He murdered individuals he believed to be plotting or cooperating against him, *id.* at ¶¶ 29-30, he directed significant acts of violence against law enforcement, *id*. at ¶ 27-28, and he threatened Special Agent Greisen's life, *id.* at ¶ 31, prompting Special Agent Greisen to change his phone number. He has continued to harass Special Agent Greisen since arriving in the United States. The defendant has baselessly accused Special Agent Greisen of extortion while providing no evidence of such. (Special Agent Greisen was in fact working towards seizure warrants with the U.S. Attorney's Office at the time of the alleged "extortion;" since the defendant has stopped short of accusing the U.S. Attorney's Office and the magistrate judge of extortion, we assume that lays to rest this false allegation.) He then posted Special Agent Greisen's new phone number in a letter on the public docket, causing Special Agent

Greisen to receive numerous calls and texts from South America.[1] And now the defendant continues with his ad hominem attacks.

These allegations made by the defendant against law enforcement are unfounded – but, given the defendant's history and characteristic of violence – they are concerning. The Court should not hesitate to see through these baseless allegations and deny the defendant's Motion to Suppress His Post-Arrest Statements (Dkt. 114).

The United States now briefly turns to address specific misstatements contained in the defendant's Supplemental Brief (Dkt. 156).

First, the defendant claims that he invoked his right to counsel while at the airport in Bolivia. This is false. The defendant's remark – "And my lawyer?" – was not an invocation of counsel. *See Davis v. United States*, 512 U.S. 452, 458-59 (1994); *United States v. Medley*, 34 F.4th 326, 334 (4th Cir. 2022); *United States v. Johnson*, 400 F.3d 187, 195 (4th Cir. 2005); *see also* Dkt. 155 at 2-3; Dkt. No. 152, Transcript of Proceedings Held on 9/26/2026 ("Transcript") at 76-77.

Second, the defendant claims that he was "interrogated" at the airport in Bolivia and again while in transit on the DEA airplane from Bolivia to Peru. This is false. The defendant was interviewed by law enforcement only one time, namely, after he arrived at Dulles International Airport in Virginia; before that point, he was never interrogated. DEA Special Agents Reyes and Vega transported the defendant from Bolivia, by way of Peru, to the United States; these agents were not otherwise involved in the defendant's case. Prior to the transport, Special Agents Reyes and Vega administered *Miranda* warnings to the defendant at the direction of their management and out of an abundance of caution; however, they did not interview the defendant. Rather, it was the defendant who, while in transit from Bolivia to Peru, initiated a conversation with Special

[1] Of note, 18 U.S.C. § 119 prohibits making publicly available restricted personal information, such as the "mobile phone number," of any officer or employee of the United States.

Agents Reyes and Vega and asked questions about his indictment. Special Agents Reyes and Vega recorded the brief conversation out of an abundance of caution and answered the defendant's questions to the best of their ability. *See generally* Dkt. 128 at 7, 19; Dkt. 155 at 3; Transcript at 74-78. Case law is clear that statements of any kind that are volunteered by the defendant while in custody are not implicated by *Miranda*. *See Rhode Island v. Innis*, 446 U.S. 291, 300-02 (1980); *United States v. Johnson*, 734 F.3d 270, 276-78 (4th Cir. 2013); *see also* Dkt. 128 at 19, Dkt. 155 at 3. Here, the defendant initiated a brief conversation with Special Agents Reyes and Vega; no interrogation occurred.

Third, the defendant takes issue with the fact that his post-arrest interview was not recorded. As discussed previously, the decision not to record the interview followed standard DEA practice. *See* Dkt. 128 at 8; Transcript at 81-82. To be sure, Special Agents Reyes and Vega made two brief audio recordings of their short conversations with the defendant. Each audio recording lasted less than three minutes. *See* Gov. Exhibits 2, 2A, 3, 3A. But Special Agents Reyes and Vega were not the case agents assigned to the defendant's case and their short conversations with the defendant were not interrogations. The interview at Dulles Airport was of a different character; this was a substantive interview conducted by the case agents that lasted several hours. The decision not to record under these circumstances was entirely reasonable and in line with standard practice. Moreover, the defendant makes a baseless allegation that Special Agent Greisen intended to deprive the defendant of his right to counsel. Nothing could be further from the truth. As Special Agent Greisen testified, the defendant never invoked his right to counsel during the interview at Dulles Airport, *see* Transcript at 104, and, moreover, it was Special Agent Greisen who in fact suggested to the defendant at the end of the interview that the defendant call his Uruguayan attorney, *see id.* at 103.

Fourth, the defendant takes issue with the fact that the case agents reviewed the defendant's biographical information with him and discussed the possibility of cooperation, claiming that these were both tactics to illicit a confession from the defendant. These claims are without merit. Case law is clear that routine questions securing personal information, such as biographical data necessary to complete booking, do not constitute an "interrogation" for the purposes of *Miranda*, *see, e.g., Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990); *United States v. D'Anjou*, 16 F.3d 604, 608-09 (4th Cir. 1994). Case law is also clear that it is entirely proper for an agent to discuss potential cooperation with a defendant. The Fourth Circuit has held that government agents "may discuss cooperation without rendering the resulting confession involuntary," and that a defendant's inculpatory statement cannot be suppressed merely because the defendant was promised leniency, and now subjectively believes his confession was involuntary. *United States v. Shears*, 762 F.2d 397, 401-03 (4th Cir. 1985).

These arguments by the defendant are futile. The government has more than met its burden of establishing by a preponderance of the evidence that the defendant's post-arrest statement was voluntary. *See e.g., United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997). Importantly, the defendant twice signed a *Miranda* waiver form, *see* Gov. Exhibits 1 and 6, and the "execution of a valid *Miranda* waiver gives rise to a strong presumption that subsequent statements are voluntary." *United States v. Hood*, 767 Fed. Appx. 456, 459 (4th Cir. 2019) (citing *Missouri v. Seibert*, 542 U.S. 600, 609 (2004) (explaining that "litigation over voluntariness tends to end with the finding of a valid waiver.")). *See also Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare."). Nothing about the circumstances of the defendant's interactions with law

enforcement prior to his interview at Dulles Internation Airport undermine the voluntariness of his post-arrest statement. The defendant's motion to suppress his post-arrest statement, Dkt. 115, must be denied.

**II. The Defendant's Motion to Dismiss Counts Three and Four Must Be Denied.**

The defendant continues to assert—without support from caselaw or the Federal Rules of Criminal Procedure—that the government's multiple bases for venue are "belated" or "last-minute revisionist." *See, e.g.,* Dkt. No. 156 at 8. Such descriptors, while surely giving his brief some color, are inapplicable—and he never once cites a single case, rule, or anything else to buttress them. It is black-letter law that venue does not need to be pled in an indictment. *See* Fed. R. Crim. Pro. 7(c); *United States v. Votteller*, 544 F.2d 1355, 1361 (6th Cir. 1976). This is because it is not an element of the crime; it is a question of fact that the government must prove by a preponderance of the evidence at trial. *United States v. Powers*, 40 F.4th 129, 134 (4th Cir. 2022). When venue is not pled in an indictment, a defendant may be entitled to a bill of particulars to apprise the defendant of how venue will be proven. *See Hemphill v. United States*, 392 F.2d 45, 48 (8th Cir.), *cert. denied*, 393 U.S. 877 (1968). The Court in *Hemphill* noted that there is no prejudice to a defendant when this occurs. *Id.* at 47-48. Here, the government has provided in painstaking detail over multiple briefs how venue will be established three different ways at trial. That is all (if not much more than) the law entitles him to.

The theory of venue relying on the server's *participation* in a particular transaction is, in and of itself, sufficient. "Participate" is defined as "to have a part or share in something." *Participate*, Merriam-Webster's Collegiate Dictionary, https://www.merriam-webster.com/dictionary/participate (last visited Oct. 13, 2026). The defense's own expert admits that the Richmond, VA server of Bank of America at minimum conducted a compliance check as

part of the particular transaction charged in Count Four. It is expected that a Bank of America representative will testify that if the transaction failed the compliance check, it would not have proceeded. It thus seems under any normal reading of the word, the server located in Richmond, VA participated—or "had a part"—in initiating the transaction. *See, e.g., Gen. Cigar Co. v. CR Carriers,* 948 F. Supp. 1030, 1038 (M.D. Ala. 1996) (person whose approval of invoices caused a third party to issue checks participated in initiating the transaction); *see* Dkt. No. 155 at 16. Its part was, at minimum, to conduct the compliance check specific to this transaction to allow it to proceed. The defense chides the government for not producing witnesses at the hearing to testify about the server and its role in the transaction. He cites no authority that would require the government to do so because no such authority exists; venue is something to be proven at trial, and pre-trial motions should not be mini-trials. *See* Fed. R. Crim. Pro. 12.

Another way the government will establish venue is by proving that the offense began abroad and the defendant was first brought to the Eastern District of Virginia, as contemplated by 18 U.S.C. § 3238. The defendant simply and baldly asserts that § 3238 is inapplicable (despite conceding that the offense began abroad in prior filings) without ever explaining why—presumably because he has no explanation, and can muster no caselaw or other support beyond this bare allegation. Dkt. No. 156 at 7. The Fourth Circuit has made clear that § 3238 applies when the crime is "essentially foreign," even if some overt acts occurred inside the United States. *United States v. Levy Auto Parts*, 787 F.2d 946, 950-52 (4th Cir. 1986). He then argues that it is "completely inconsistent" with the government's prior pleadings. Dkt. No. 156 at 8. On the contrary, the SSI makes clear that the offense began abroad, and that millions of dollars in money from foreign drug sales passed through the U.S. financial system. *See* SSI ¶¶ 6, 8, 11. Even if it

were not plead in the SSI, it does not matter—venue does not need to be plead in an indictment. *See* Fed. R. Crim. Pro. 7(c); *Votteller*, 544 F.2d at 1361.

**III. The Defendant's Motion to Dismiss Count One Must Be Denied.**

Although the defendant brought a motion challenging Count One on Due Process grounds, he appears to now also claim that the SSI is defective for not alleging what "things of pecuniary value" were provided. Dkt. No. 156 at 9. Even assuming this argument isn't waived for not being properly or timely raised, the language of the SSI tracks the statutory language; that is sufficient for pleading an offense. *See* Fed. R. Crim. Pro. 7(c); *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). In addition, the general allegations incorporated into Count One give the defendant pages of information about how the offense was committed, including how he funded his DTMLO.

With respect to his Due Process argument, the defendant does not reckon with the fact that millions of his drug dollars transited U.S. banks, that he threatened a DEA agent, that he sent drugs to this country, that he conspired to distribute drugs abroad with individuals located in the U.S., or that he trafficked cocaine on the high seas in violation of the Maritime Drug Law Enforcement Act (MDLEA). He does not reckon with the fact that his conduct is universally condemned and that treaties obligate the U.S. to fully prosecute him now that he is present in our territory. Instead, he ignores Fourth Circuit caselaw, *see, e.g., United States v. Murillo*, 826 F.3d 152, 157 (4th Cir. 2016), to focus on the Second Circuit, and then cherry picks facts as he sees fit. As such, this motion can quickly be denied.

**IV. The Defendant's Motion to Dismiss Count Two Must Be Denied.**

The defendant apparently concedes that the boat was in Colombia's Exclusive Economic Zone. Dkt. No. 156 at 19. On top of his concessions that no certification is required and that the

vessel is stateless (Transcript at 70), there is essentially no longer a dispute that this vessel is subject to U.S. jurisdiction. 46 U.S.C. § 70504(a).

The defendant then shifts his arguments to focusing on what has or has not been produced in discovery at this point in time. The government has turned over all Rule 16 discovery related to this boat seizure and will continue to be mindful of its discovery obligations.

**CONCLUSION**

The defendant's Motions to Dismiss Counts of the Indictment (Dkt. Nos. 96, 109, 110, 111), Motion to Suppress the Defendant's Post-Arrest Statement (Dkt. No. 114), and Motion to Dismiss for Vindictive Prosecution (Dkt. No. 115), must all be denied. Additionally, the defendant's Motion to Quash the Seizure Warrant, Dkt. 112, must be dismissed as moot.

Respectfully submitted,

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

By: ______/s/________________

Anthony T. Aminoff
Catherine Rosenberg
Assistant United States Attorneys
(703) 299-3700
Anthony.Aminoff@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, with automatically generated a Notice of Electronic Filing to counsel of record in this case.

/s/
Anthony T. Aminoff
Assistant United States Attorney